Clarence T. HATLESTAD, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–103.

United States Court of Veterans Appeals.

Submitted Jan. 26, 1992.

Decided July 8, 1992.

Order on Motion for Review
En Banc Sept. 11, 1992.

Ronald L. Smith, Washington, D.C., was on the pleading, for appellant.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Angela Foehl, Washington, D.C., were on the pleadings, for appellee.

Before KRAMER, MANKIN and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

In an earlier opinion in this case, decided March 6, 1991, the Court remanded the record to the Board of Veterans' Appeals (Board or BVA) for readjudication in accordance with the Court's opinion. *Hatlestad v. Derwinski*, 1 Vet.App. 164 (1991) (hereafter referred to as *Hatlestad I*). On August 2, 1991, the Secretary of Veterans Affairs (Secretary) filed a Notice of Final Action taken by the BVA pursuant to that remand, enclosing a copy of a 29–page Board opinion, dated June 7, 1991. On December 4, 1991, the appellant moved for a further remand of the appeal to the Board, and on December 20, 1991, the Secretary opposed that motion. The appellant's motion will be denied, and the BVA decision will be affirmed.

## I. BACKGROUND

The underlying claim in *Hatlestad I* and in the current appeal relates to the claim of WWII veteran Clarence T. Hatlestad, the appellant, that his service-connected disabilities arising from combat wounds rendered him unemployable and thus require that he receive a disability rating of 100%, rather than the 70% combined disability rating he was awarded (for numerous disabilities) in May 1988. In *Hatlestad I*, the Court quoted at length from five specific regulatory provisions (*id.* at 165–67) and characterized them as "in some respects duplicative and

in others apparently conflicting as to whether an objective ('average person') or subjective ('the veteran') standard applies in determining 'unemployability'." *Id.* at 170. The Court further noted that "the regulatory provisions relating to unemployability and total disability [are] a confusing tapestry for the adjudication of claims." *Id.* at 167. The record was remanded and the Board was directed to answer six specific questions:

(1) The precise [Department of Veterans Affairs (VA)] regulatory provisions applicable to the appellant's claim based on unemployability and the interrelationship of these regulations, resolving the apparent conflicts in those regulations.

(2) The inconsistencies in the record regarding (a) the education level the appellant achieved, (b) the dates of his hospitalization at the Fargo VAMC [(Medical Center)] and how the evaluation and treatment at that time relate to his employment history, and (c) the dates of his last employment.

(3) The extent to which non-service-connected conditions are a cause of the appellant's unemployment and alleged unemployability, taking into account the treating VA physician's uncontroverted statement and the appellant's testimony under oath that those conditions are not the cause.

(4) The extent to which pain is a factor in the appellant's unemployment.

(5) The appellant's capacity for work, without regard to his age.

(6) The credibility of the appellant's personal, sworn testimony as evidence. *Hatlestad I*, 1 Vet.App. at 170.

In its June 7, 1991, decision, the BVA answered each of the Court's specific questions. *Clarence T. Hatlestad*, BVA 91–41570 (June 7, 1991) (supplemental decision). In his December 4, 1991, motion for remand, the appellant does not challenge the Board's answers to any of these specific questions, but rather proposes a second remand in order for the veteran to have the opportunity to introduce additional evidence before the Board relating to an alleged incident regarding the veteran break-

ing up a sidewalk with a sledgehammer and removing the debris with a tractor trailer. R. at 7. The Secretary contends that any such evidence which appellant wishes to proffer be the subject of a motion in the Regional Office to reopen the veteran's claim.

## II. ANALYSIS

### A.

■ The Court agrees with the Secretary that the appellant's motion is inappropriate as an attempt to piggyback into the Court's proceedings evidence that is precluded from the Court's consideration because it was not part of the "record of proceedings before the Secretary and the Board." 38 U.S.C. § 7252(b) (formerly § 4052); *see Rogozinski v. Derwinski,* 1 Vet.App. 19, 20 (1990).

### B.

As to the Board's compliance with the remand instructions in *Hatlestad I,* because the appellant, here represented, has not challenged the Board's compliance the Court, sua sponte, would find non-compliance only if the Board had grossly failed to comply. That is generally not the case here. However, for the reasons stated in part C of this opinion, we do not concur with the Board's conclusion with respect to the essentially "objective" nature of the criteria in VA's unemployability regulations.

### C.

Although trying mightily to do so, the Board has failed to make sense of the "confusing tapestry" of regulations of the Department regarding individual unemployability. After reviewing the regulations regarding unemployability and some of the legislative history regarding their statutory underpinnings, the Board concluded:

> [T]he controlling statutory provisions governing the award of compensation benefits have moved progressively toward an objective standard that considers the individual veterans' disabilities

only in the context of the impairment they would cause for the average person across the broad range of civil occupations.

. . . . .

> Only when the standard [the "average" person or worker standard] is adjusted to an average person with this veteran's disabilities, education and occupational experience, is the determination a true picture of the ability to engage in substantially gainful employment.

. . . . .

> Whatever the factual scenario in a particular case may be with respect to service-connected disabilities, education, work background and any recent change in employment or level of impairment, the standard to be applied is always objective, plugging in the variables pertaining to the particular claimant.

*Hatlestad,* BVA 91–41570, at 11, 15, 16.

The statutory bases for the Secretary's various regulations regarding unemployability are found in 38 U.S.C. §§ 1110, 1131, and 1155 (formerly §§ 310, 331, and 355). None of these provisions provide express statutory authority for the award of a total disability compensation rating for a veteran rated less than 100% disabled but who is, nevertheless, unemployable. Section 1110 provides the basic entitlement to wartime disability compensation as follows:

> For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to **any veteran thus disabled** and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.

(Emphasis added.) Section 1131 is identical except that it applies to service "during other than another period of war".

Section 1155 authorizes the Secretary to adopt a schedule for rating disabilities as follows:

The Secretary shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, **as far as practicable,** upon the average impairments of earning capacity resulting from such injuries in civil occupations.

(Emphasis added.)

The statute thus calls for ratings to be based on "average impairments of earning capacity" but only "as far as practicable", and in the basic entitlement section refers to the specific disabilities of an individual veteran ("any veteran thus disabled"). Read together, these statutory provisions authorize the adoption of a regulatory scheme, pursuant to the Secretary's general authority in 38 U.S.C. § 501(a) (formerly contained in § 210(c)(1)) "to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws ...", which mixes both objective and subjective criteria. For different reasons, this is the same conclusion which the Court reached in *Talley v. Derwinski*, 2 Vet.App. 282, 286–87 (1992), with respect to the Secretary's regulations regarding unemployability determinations under the VA's non-service-connected pension program under chapter 15 of title 38, U.S.Code.

Having concluded that the regulatory mix of objective and subjective criteria for determining unemployability is authorized by law, however, the Court notes that the myriad regulatory provisions regarding unemployability fail to set forth a consistent, coherent picture. The BVA has conceded as much by stating that at least three of the regulations (38 C.F.R. §§ 3.340(a)(3)(iii), 4.16(a) and 4.18) suffer from "inartful draftsmanship", *Hatlestad*, BVA 91–41570, at 11, 12, 14, 15, and 16, in that they refer to factual findings regarding the disability of "the veteran", "the disabled person", "a veteran", or "veterans" rather than the objective "average person".

The Board's analysis is based upon its mistaken conclusion that the statute authorizes only objective standards, and that, hence, any ambiguous portions of the regulations must be construed as being essentially objective. Because we conclude that the authorizing statutory provisions permit a combination of objective and subjective criteria, we need not adopt, or even address, the Board's tortuous attempt to fit all of the various regulatory provisions into a neat syllogism. Rather, we find ourselves in substantial agreement with the subsequent precedent opinion of VA's General Counsel, dated December 27, 1991, which counsel for the Secretary filed with the Court in this appeal on February 16, 1992: "Congress [by virtue of 38 U.S.C. § 1155] has authorized consideration in disability ratings of factors affecting the individual veteran, rather than the 'average person', where necessary to reflect the veteran's true level of disability." O.G.C. Prec. 75–91, at 4. The General Counsel then discusses numerous ways in which the regulations establish subjective criteria and concludes that "Congress has been aware of and has accepted VA's interpretation regarding unemployability." *Id.* at 6, 8. Accordingly, we note, as we did in *Talley* with regard to VA pension, that "the Secretary would be well-advised to undertake a broad-based review and revision of ... the unemployability regulations" regarding VA compensation in order to present a comprehensible and consistent formulation from which clear guidance can be drawn by veterans, rating boards, the BVA, and this Court. *Talley*, 2 Vet.App. at 288.

**D.**

The confusion engendered by the regulatory scheme (if indeed, there is a single scheme) and the Board's heroic but unsuccessful attempts to rationalize it as essentially objective are well illustrated by the facial inadequacy of the Board's own findings of fact and conclusion of law in the very decision in which that analysis is

made. The Board's fourth finding of fact provides:

4. The service-connected disabilities are not of sufficient severity as to prevent the appellant from engaging in some form of substantially gainful employment consistent with his education and occupational experience.

.    .    .    .    .

And its conclusion of law is:

The appellant does not have service-connected disabilities which are sufficient to produce unemployability without regard to advancing age.

*Hatlestad,* 91–41570, at 28.   Hence, after its Herculean effort to place all of the regulations within an objective context and rubric, the BVA fails to refer in its fact findings or conclusion of law to the "average" person or veteran, when applying the specific facts of the case to those regulations.   Indeed, in its entire 10–page discussion of the individual veteran's eligibility for a total rating under the applicable regulations, the Board does not refer even once to the "average" person or veteran or any other objective criterion.   *Id.* at 17–27.

### E.

■ Finally, we note that the Board has cited two medical authorities with respect to the definition of pain and specifically with respect to pain associated with "disease of the lumbar spine".   Although one of the medical sources, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1112 (2d ed. 1988), is quoted directly in three respects, the other, R. ADAMS and M. VICTOR, PRINCIPLES OF NEUROLOGY, 137 (2d ed. 1981), is not quoted but apparently only summarized. *Id.* at 18.   Although such a citation would appear to comply with the Court's opinion in *Colvin v. Derwinski,* 1 Vet.App. 171 (1991), regarding citation of recognized medical treatises to support medical conclusions, we amplify the requirement set forth in *Colvin* as drawn from *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990), by noting that such bare citations do not comply with the underlying concept on which that *Colvin* rule is based.   1 Vet.App. at 175.

The procedure that the Court called for in *Colvin,* to preclude the BVA from "refuting the expert medical conclusions in the record with its own unsubstantiated medical conclusions", was designed to ensure "that all medical evidence contrary to the veteran's claim will be made known to [the veteran] and be a part of the record before this Court." *Ibid.*   This requirement derives from the two critical purposes of the requirement in 38 U.S.C. § 7104(d)(1) (formerly § 4004) as elucidated in *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990), and as succinctly summarized in *Sammarco v. Derwinski,* 1 Vet.App. 111, 113 (1991), as follows: "to inform the claimant and to make meaningful review by this Court possible".   In our view, meaningfully informing a claimant and meaningful judicial review are not possible where only a bare citation to a medical text is provided.   Very few claimants have ready access to any medical treatises and thus are basically prevented, unless they are represented, from challenging the Board's reliance on such treatises for the medical conclusions reached in its decisions.   Moreover, this Court is effectively precluded from economical judicial review where the citation is to a text not readily available to the Court.

Accordingly, the Board should henceforth include in its decisions quotations from medical treatises (rather than bare citations), and such quotations should be of sufficient length so that their context (both within the treatise in question and within the body of relevant medical literature) is able to be determined.   Under this procedure, the Board would be free to draw guidance from a great diversity of recognized medical treatises, rather than, for example, only those that may be readily available to this Court.

### III.   CONCLUSION

For the reasons set forth above, the appellant's motion for remand is denied and the Board's June 7, 1991, decision is affirmed.

AFFIRMED.

## ORDER

On March 6, 1991, the Court, retaining jurisdiction, remanded this case to the Board of Veterans' Appeals (Board or BVA) with instructions to answer six specific questions. In a June 7, 1991, decision, the BVA found that appellant did not have service-connected disabilities sufficient to produce unemployability.

On November 18, 1991, pursuant to an order of the Court dated November 4, 1991, appellant filed a statement of issues specifying six questions to be raised on appeal from the Board's June 1991 decision.

On December 4, 1991, appellant moved for a second remand to allow him the opportunity to introduce additional evidence before the Board. The Secretary of Veterans Affairs (Secretary) responded that any such evidence should be the subject of a motion in the regional office to reopen the claim.

On July 8, 1992, the Court issued a second decision in the case. In it, the Court noted that, because appellant had not challenged the Board's compliance, the Court would find non-compliance only if the Board had grossly failed to comply. The Court noted that such was generally not the case, denied appellant's motion for remand, and affirmed the Board's June 7, 1991, decision.

On July 22, 1992, appellant filed a motion for review en banc. Appellant argues that, although he sought remand in order to submit additional evidence to the Board, he neither abandoned nor waived any of the issues previously raised in his November 18, 1991, statement of issues. He also notes that nothing in Rule 27 of this Court's Rules of Practice and Procedure provides that filing a motion for remand precludes the right to file a brief on the merits. Accordingly, appellant states that he has been denied due process of law.

On consideration of the foregoing, it is

ORDERED, sua sponte, that issuance of the Court's judgment pursuant to the July 8, 1992, opinion of the Court is held in abeyance pending further order of the Court. U.S.Vet.App.R. 36 (Clerk shall enter judgment 14 days after opinion becomes decision of the Court unless otherwise ordered by the Court). It is further

ORDERED that appellant's motion for en banc review is held in abeyance pending further order of the Court. It is further

ORDERED that the Secretary, within 30 days after the date of this order, file with the Clerk and serve on appellant a designation of all material in the record of proceedings before the Secretary and the Board not previously made part of the record on appeal.