**Vera E. SCHOONOVER, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–1328.

United States Court of Veterans Appeals.

Submitted March 5, 1992.

Decided Aug. 25, 1992.

Douglas K. Davis (non-attorney practitioner), was on the brief for appellant.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and John D. McNamee, Washington, D.C., were on the pleadings for appellee.

Before NEBEKER, Chief Judge, KRAMER and IVERS, Associate Judges.

IVERS, Associate Judge:

Appellant, Vera E. Schoonover, appeals from a July 18, 1990, Board of Veterans' Appeals (BVA or Board) decision which upheld the denial for service connection for the death of her veteran husband, thereby denying death and indemnity compensation (DIC) benefits for appellant. For the reasons set forth below, the Court vacates the BVA decision and remands the case to the Board for readjudication consistent with this opinion.

## I. BACKGROUND

Veteran, James F. Schoonover, served in the United States Army from January 17, 1941, to June 30, 1967. R. at 1. During his Army career, veteran spent fifteen months in combat in the Southwest Pacific during World War II. R. at 24. On July 18, 1952, veteran underwent a surgical excision of a mole on his face. The diagnosis was "[b]asal cell, carcinoma, site unknown." R. at 50. Captain Marvin B. Rodney, Medical Corps, stated in his report that "[t]here is some question that this lesion is completely excised." *Id.* This turned out to be the first of many skin treatments involving the removal of basal cell carcinomas from veteran's skin.

On January 11, 1954, veteran was diagnosed as having otosclerosis. R. at 89. Otosclerosis is the "growth of spongy bone in the inner ear where it gradually obstructs the oval window or round window or both and causes progressively increasing deafness." WEBSTER'S MEDICAL DESK DICTIONARY 503 (1986). On July 16, 1956, veteran had a cyst removed from his left ear lobe. R. at 123. On May 19, 1967, veteran had a papule on his left cheek which was diagnosed as a basal cell epithelioma. R. at 245.

Prior to discharge, veteran's Physical Profile Record listed him as having high blood pressure and hearing loss, mild, bilateral. His duty was not to involve strenuous physical activity. R. at 246. After discharge, veteran underwent a Veterans'

Administration (now Department of Veterans Affairs) (VA) examination. He was diagnosed as having "[h]ypertension, essential, presently treated, presently normotensive," "arteriosclerosis, generalized, mild," "arteriosclerotic heart disease, with history of old right bundle branch-block, Class I–A," and "albuminuria—mild—unknown cause." R. at 262. On October 17, 1967, veteran was granted service connection by the VA for "generalized arteriosclerosis and essential hypertension" evaluated at twenty-percent disabling, and for "defective hearing, bilateral, conductive," at ten-percent disabling. R. at 368–69.

From November 12, 1969, to October 4, 1976, veteran periodically received treatment for basal cell carcinomas. R. at 269, 271, 284, 305, 315, 333, 345, 352. On May 25, 1977, veteran underwent a special cardiovascular examination. R. at 372. Veteran was diagnosed with "[e]ssential hypertension, moderate; controlled on treatment" and "[m]inimal peripheral arteriosclerosis." Id. In March 1986, veteran received treatment for adenocarcinoma and a liver condition. R. at 396–98. On July 25, 1986, a pigmented skin lesion was found near his left ear which was diagnosed as a nodular melanoma. R. at 456. From October 24, 1986, to November 12, 1986, veteran received treatment for the nodular melanoma including a "wide excision of the melanoma with partial left auriculectomy, left superficial parotidectomy, left periauricular neck dissection and advancement flap reconstruction." R. at 402.

Veteran underwent a VA examination on October 14, 1987. R. at 377–90. As a result of that examination, veteran's disability rating increased for arteriosclerotic heart disease with atrial fibrillation and hypertension to sixty percent, and to thirty percent for his bilateral defective hearing. R. at 391. Veteran had a total rating of seventy-percent disabled. R. at 392. In April 1988, veteran began receiving treatment for melanoma, metastatic to his lungs. R. at 426. By August 22, 1988, veteran's melanoma metastasized to his brain. R. at 433.

On September 16, 1988, veteran died. His death certificate listed the cause of death as "brain metastases" of "[one] month['s]" duration "as a consequence of [a] malignant melanoma" of approximately "[two] years." R. at 435. Under "[o]ther significant conditions," or "conditions contributing to death but not related to cause given," "essential hypertension" and "chronic atrial fibrillation" were noted. Id.

On October 4, 1988, appellant filed an Application for DIC or Death Pension by Surviving Spouse or Child. R. at 437. Medical records of the veteran were requested by the VA on October 4, 1988. R. at 436. The rating board, in a February 10, 1989, rating decision, denied service connection for veteran's death. R. at 436. Appellant filed her Notice of Disagreement on August 23, 1989. R. at 447–48. Additional medical records were requested by the VA on September 5, 1989. R. at 449. The rating board confirmed the previous rating on November 16, 1989. R. at 505. A Statement of the Case was sent to appellant on November 30, 1989. R. at 507–10. The denial for service connection for the death of the veteran was upheld by the BVA on July 18, 1990. Appellant made a timely appeal to this Court. The Court has jurisdiction to hear this case pursuant to 38 U.S.C. § 7252 (formerly § 4052).

## II. ANALYSIS

### A. Service Connection for Death

Service connection for death is governed under 38 U.S.C. § 1310 (formerly § 410). Guidelines for determining whether death is serviced-connected are found in 38 C.F.R. § 3.312 (1991). In order for a surviving spouse, children, or parents to recover DIC benefits from the VA, section 1310 requires that the veteran's death must occur after December 31, 1956, and that he must have been "discharged or released under conditions other than dishonorable from the period of active military, naval, or air service in which the disability causing such veteran's death was incurred or aggravated," or "died while in the active military, naval, or air service."

Here, veteran was honorably discharged and died after December 31, 1956. The only question remaining is whether his service-connected disorders either directly caused or contributed to his death. According to § 3.312(a), a veteran's death will be considered to have resulted from a service-connected disability "when the evidence establishes that such disability was either the principal or a contributory cause of death."

At the time of veteran's death, he had a combined total disability rating of seventy percent, for, among other things, arteriosclerosis and hypertension. The death certificate listed brain metastases as the immediate cause of death. However, the death certificate also listed essential hypertension and chronic atrial fibrillation as "conditions contributing to death but not related to cause given." R. at 435. Under 38 C.F.R. § 3.312(b), the Board is correct that his service-connected disabilities were not the principal cause of death. However, 38 C.F.R. § 3.312(c) sets forth instances when the service-connected disabilities are contributory causes of death, and thus, if found, service connection should be granted.

In the instant case, the Board did not fully address why veteran's service-connected disorders did not play a role in his death. Appellant contends that her husband's service-connected arteriosclerotic heart disease with atrial fibrillation and hypertension contributed to his death. In addressing this claim, the Board stated:

> To establish that a service-connected condition contributed to death, the evidence must demonstrate that it substantially or materially weakened the veteran's health to the point that he was less capable of resisting the disease which caused his death.
>
> The record discloses that the veteran experienced no significant chronic shortness of breath or chest pain or any significant limitations in activity because of arteriosclerosis. In addition, hypertension remained well controlled over the years; occasional episodes of increased blood pressure were soon brought under control. The terminal hospital report makes no reference to problems with management for the veteran's heart disease or hypertension.
>
> The medical evidence, in this case, shows that malignant melanoma was so overwhelming that it produced the veteran's death irrespective of coexisting service-connected heart disease or hypertension. The evidence does not raise a reasonable doubt or otherwise warrant allowance of the appeal.

*Vera E. Schoonover*, BVA 90–2451, at 3–4 (Jul. 18, 1990). Although the melanoma was the direct cause of the death, it took over two years before the cancer metastasized to veteran's brain. The Board's conclusory statement that the "malignant melanoma was so overwhelming that it produced the veteran's death irrespective of coexisting service-connected heart disease or hypertension" is not clearly substantiated in the record. According to *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991), "BVA panels may consider only independent medical evidence to support their findings." Although the service-connected cardio-vascular condition did not cause the veteran's death, the Board did not reference any evidence of record to the effect that such condition, over time, did not contribute to the cause of death. "If the medical evidence of record is insufficient, or in the opinion of the BVA of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, . . . or [quoting] recognized medical treatises in its decision that clearly support its ultimate conclusions." *Id; Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992) (medical treatises must be quoted in sufficient length so context is able to be determined). Instead, the Board's discussion dealt solely with direct causation. Here, because the veteran's service-connected disorders involved "vital organs," a more detailed discussion should have been provided under 38 C.F.R. § 3.312(c)(3). That section states:

> Service-connected diseases or injuries involving active processes affecting vital organs should receive careful consider-

ation as a contributory cause of death, the primary cause being unrelated, from the viewpoint of whether there were resulting debilitating effects and general impairment of health to an extent that would render the person materially less capable of resisting the effects of other disease or injury primarily causing death. Where the service-connected condition affects vital organs as distinguished from muscular or skeletal functions and is evaluated as 100 percent disabling, debilitation may be assumed.

The Board erred by not addressing this part of the regulation in its decision. Arguably appellant's seventy-percent combined service-connected disorders could have rendered veteran "materially less capable of resisting the effects of other disease or injury primarily causing death."

### B. Direct Service Connection

Although this case is being remanded for further adjudication as to contributory cause of death, the Court notes that veteran died from brain metastases which were secondary to lung metastases which were secondary to a malignant melanoma. Malignant melanoma is "a tumor of high malignancy that starts in a black mole and metastasizes rapidly and widely." WEBSTER'S MEDICAL DESK DICTIONARY 420. Veteran was first treated for a basal cell carcinoma, a form of skin cancer, in 1952, while in service. The record shows periodic treatment for basal cell carcinomas and other skin-related conditions from service until his death.

According to the February 10, 1989, rating decision, veteran had never filed a claim for service connection for his skin carcinomas. R. at 445. Veteran's repeated bouts with skin cancer were never addressed by the Board in its decision, yet medical treatment for his condition is documented throughout the record. Because the record is replete with references to treatment for carcinoma and other skin related conditions and because the primary cause of death is related to a skin condition, the Board, on remand may wish to examine the issue of service connection for the primary cause of death while exploring the contributory causes. *See generally Akles v. Derwinski,* 1 Vet.App. 118 (1991) (Secretary of Veterans Affairs has an obligation to ensure that veteran is informed of all benefits which he may be entitled to receive); *Douglas v. Derwinski,* 2 Vet.App. 103, 110 (1992) (remanded in part for the BVA to consider the issue of direct service connection for appellant's carcinoma based on excessive exposure to the sun during his tenure as a deckhand in the Pacific Theater), *aff'd Douglas v. Derwinski,* 2 Vet. App. 435, 440–41 (1992). *Cf. Murphy v. Derwinski,* 1 Vet.App. 78, 82 (1991) (remanded in part for the BVA to provide reasons or bases why veteran's previous service-connected cancer was not causally connected to the cancer that directly caused his death).

### III. CONCLUSION

The July 18, 1990, BVA decision is VACATED and REMANDED to the Board for further development and reconsideration of all relevant evidence, issues, and regulations in a manner consistent with this opinion.