George L. BROCK, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–1450.

United States Court of Veterans Appeals.

June 7, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The pro se appellant, Vietnam-era veteran George L. Brock, appeals from an April 29, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to service connection for a back disorder. *George L. Brock*, BVA 91–13769 (Apr. 29, 1991). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. Summary disposition is appropriate here because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). For the reasons set forth below, the Secretary's motion will be denied and the Board's decision will be vacated and the matter remanded for readjudication.

### I. Background

The veteran served on active duty in the United States Army from May 1966 to April 1968. R. at 1. The record of his January 1968 preinduction physical examination is negative for any defects. R. at 2–5. Service medical records (SMRs) show that in October 1967 the veteran complained of back pain and was prescribed a course of heat treatment and exercise. R. at 10. In November 1967, after a complaint that his back pain was increasing, the veteran was seen in an Army orthopedic clinic. R. at 11. An X-ray report dated that month stated the following findings:

> DORSAL SPINE: There is some straightening in the normal curvature, and slight[,] almost local[,] scoliosis toward the right at the level of TH–7[;] this body is somewhat asymmetric in configuration, more likely developmental in nature.
>
> L[UMBO]S[ACRAL]–SPINE: Rotoscoliosis toward the left of the lumbar spine. No localized abnormalities suspected.

R. at 16. "Scoliosis" is "lateral curvature of the spine"; "rotoscoliosis" is "[c]urvature of the vertebral column by turning on its axis" STEDMAN'S MEDICAL DICTIONARY 1394, 1372 (25th ed. 1990) [hereinafter "STEDMAN'S"]. An X-ray report prepared by the same physician later that month stated the following findings with regard to the lumbosacral spine: "There is pronounced, however smooth[,] rotoscoliosis of the lumbar spine toward the left. Details about the L–5/S–1 area are not sufficiently demonstrated, with developmental abnormality about the small joint on the left suggested." R. at 17. The veteran was diagnosed with dorsal kyphosis ("deformity of the spine characterized by extensive flexion", STEDMAN'S at 830), thorax asymmetry, and scoliosis. R. at 11. He was returned to duty that same month, but a permanent physical profile record, noting "Abnormal curvature of [the] spine (kyphoscoliosis)", recited that he was to be prohibited from duties involving heavy lifting. R. at 6. "Kyphoscoliosis" is "[k]yphosis combined with scoliosis". STEDMAN'S, at 830.

The next month, according to a December 1967 SMR entry, the veteran complained of back pain in the L–4 region after having slipped on some ice and twisted his back. R. at 12. The examiner noted "? spasm l[ef]t perilumbar musculature[.] ? L[imitation] O[f] M[otion] flexion. F[ull] R[ange] O[f]

M[otion] other directions." *Ibid.* The record of the physical examination performed at the time of his separation from service is negative for any back condition; the Court notes that, although the report form contains a space to record medical profiles, the examination report makes no note of the veteran's "permanent" profile. R. at 32–35.

In April 1968, right after his separation from the service, the veteran's claim for service connection for a back injury was denied by a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO), which found that the veteran's kyphoscoliosis was a "[c]onstitutional or developmental abnormality, not a disability under the law" and further found that the "notation of the vet[eran] twisting his back when he fell on the ice is not considered to be an injury that caused permanent aggravation of his back condition." R. at 36. The RO decision became final when the veteran did not appeal it within a year. *See* 38 U.S.C.A. § 7105(b)(1), (c) (West 1991).

Twenty-one years later, in July 1989, the veteran sought to reopen his claim. In April 1990, he testified under oath at a personal hearing before the VARO that he had not experienced any back pain or other symptomatology either prior to service or during his first eighteen months of service. R. at 51–54. He testified that he first felt back pain in October 1967 after loading firewood into a truck. R. at 54. He stated that, following that episode of back pain, he was taken to an Army medical facility where he was diagnosed with scoliosis and given the medical profile prohibiting heavy lifting; he further testified that the examining physician had informed him of his eligibility for a medical discharge and a 30% disability rating, but the veteran stated that he preferred to complete the seven months remaining in his tour of duty rather than to seek a medical discharge. R. at 55. He testified that, even after the medical profile had been entered into his records, his assigned duties included lifting coils of wire weighing between 80 and 140 pounds. R. at 58. In his testimony, he stated that he had had back pain ever since his in-service diagnosis, and that he had been prescribed "pain pills" by the VA Medical

Center (MC) in Gainesville, Florida. R. at 60–61. No records from the Gainesville VAMC appear in the record on appeal.

## II. Discussion

### A. Reopening

Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen previously and finally disallowed claims, the BVA must conduct a "two-step" analysis. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If it is, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 215 (1991). The determination as to whether evidence is "new and material" is a question of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Jones*, 1 Vet.App. at 213; *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). The Court recently synthesized the applicable law as follows:

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin, supra,* ... must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox v. Brown*, 5 Vet.App. 95, 98 (1993).

It is unclear whether the Board found the evidence not new and material and thus did not reopen the claim or whether it reopened the claim and denied it on the merits. The Board concluded as a matter of law that "new and material evidence establishing a new factual basis warranting service connection for a back disorder has not been presented." *Brock*, BVA 91–13769, at 5. For

the reasons set forth below, the Court holds that the veteran did submit "new and material" evidence to reopen his claim.

■ Specifically, the veteran's April 1990 sworn testimony that he had not had any back problems prior to service and that his back problems had begun in service after lifting firewood is "new" because that evidence had not been before the RO at the time of its April 1968 final decision. It is "material" because it is "relevant and probative" and, if believed as it must be presumptively for this threshold determination (*see Cox, supra; Justus v. Principi*, 3 Vet.App. 510, 513 (1992)), it creates a reasonable possibility of changing the outcome of the prior decision. *See Cartright v. Derwinski*, 2 Vet. App. 24, 25–26 (1991) (lay evidence, including claimant's sworn testimony, may be sufficient to place the evidence in relative equipoise and thereby establish entitlement to service connection); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53–56 (1990) (claimant entitled to benefit of doubt when evidence is in "relative equipoise"); *Colvin, supra* (determination of materiality is to take into account "benefit of the doubt" standard "which necessarily lowers the threshold of whether the new and material evidence is sufficient to change the outcome"). Although the Board rejected the veteran's sworn testimony, that credibility determination is not to be made at this threshold stage of the adjudication.

## B.  Reasons or Bases

■ Having determined that there was new and material evidence to reopen the claim, the Court must next review the adequacy of the adjudication of the claim on the merits. The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C.A. § 7104(d)(1) (West 1991); *Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Masors*, 2 Vet.App. at 188; *Gilbert*, 1 Vet.App. at 57. When making a medical conclusion, the Board must support it on the basis of

independent medical evidence in the record or through adequate quotation from recognized medical treatises; it may not rely upon its own unsubstantiated medical judgment. *See Thurber v. Brown*, 5 Vet.App. 119, 121–122 (1993); *Hatlestad v. Derwinski*, 3 Vet. App. 213, 217 (1992); *Colvin*, 1 Vet.App. at 175.

Pursuant to the presumption of sound condition:

> [E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of examination, acceptance, and enrollment, or where **clear and unmistakable evidence** demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

38 U.S.C.A. § 1111 (West 1991) (emphasis added); *see also* 38 C.F.R. § 3.304(b) (1992). When a preexisting condition is properly found (either because it was noted at entry or because it was demonstrated by clear and unmistakable evidence), the presumption of aggravation provides:

> A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a **specific finding** that the increase in disability is due to the natural progress of the disease.

38 U.S.C.A. § 1153 (West 1991) (emphasis added). Furthermore, 38 C.F.R. § 3.306(b) (1992) provides that, as to veterans of wartime service (such as the veteran here), **"[c]lear and unmistakable evidence (obvious or manifest)** is required to rebut the presumption of aggravation". (Emphasis added.)

In its decision, the BVA concluded that in 1968 the RO had considered all relevant evidence of record, stating: "In view of the congenital nature of the veteran's back disorder, and the normal findings shown on the veteran's separation examination, the originating agency's [1968] denial of entitlement to service connection for a back disorder

appears to be fully supported by the evidence then of record." *Brock,* BVA 91–13769, at 4.

Neither the 1991 BVA decision here on appeal nor the 1968 RO decision on which it relied cited the predecessor of section 1111 (section 311) or pointed to any "clear and unmistakable evidence" that the veteran had kyphoscoliosis prior to service. Although the one in-service X-ray report described the veteran's scoliosis as "more likely developmental in nature" and another noted a "suggest[ion]" of a "developmental abnormality" of the lumbar spine, the Board decision did not explain how this evidence constituted "clear and unmistakable evidence" of preexisting kyphoscoliosis.

### C. Duty to Assist

When a claim is reopened, the Board's obligation to provide reasons or bases for its findings and conclusions "is not satisfied by adopting findings which are based upon inadequate reasons or bases." *Oppenheimer v. Derwinski,* 1 Vet.App. 370, 371 (1991). Therefore, the Board in this case was required to provide an adequate statement of reasons or bases for any conclusion that the presumption of sound condition was rebutted by clear and unmistakable evidence. In doing so, the Board was not permitted simply to adopt the findings in the 1968 rating decision, which do not themselves comport with the reasons-or-bases requirement of section 7104(d)(1).

■ The BVA decision describes the veteran's kyphoscoliosis as "a congenital defect". *Brock,* BVA 91–13769, at 4. This is an unsubstantiated medical conclusion. As noted above, the Board may not base its decisions on its own unsubstantiated medical conclusions, but must support any medical conclusions through citation to independent medical evidence in the record or, following proper notice to the claimant with an opportunity to respond, adequate quotation of recognized medical treatises. *See Thurber, supra; Hatlestad, supra; Colvin, supra.*

Based on the foregoing analysis, remand is required for the Board to readjudicate the claim and to issue a decision fully supported by an adequate statement of reasons or bas-es. In its reasons or bases, the Board must take account of the statutory and regulatory requirements that the presumptions may be rebutted only by "clear and unmistakable evidence", and the Board may rely upon only medical evidence of record to support any medical conclusions.

■ Once a claimant for VA benefits submits a well-grounded claim ("a plausible claim, one which is meritorious on its own or capable of substantiation", *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990)), "[t]he Secretary shall assist such a claimant in developing the facts pertinent to the claim". 38 U.S.C.A. § 5107(a) (West 1991). Here, the veteran has submitted a well-grounded claim by virtue of the in-service diagnosis of kyphoscoliosis and his 1990 sworn testimony that his back condition had occurred during or been aggravated by military service. Despite the veteran's testimony that he had been treated by the Gainesville VAMC, the Board did not seek to obtain records of such treatment to determine the extent of his current back pain and the likelihood that it was caused by or aggravated during his service. This failure violated the Board's statutory duty to assist the veteran. *See Littke v. Derwinski,* 1 Vet.App. 90 (1990); *Green (Victor) v. Derwinski,* 1 Vet.App. 121 (1991). On remand, the Board shall seek to obtain and, if obtained, consider such records and discuss them in its decision.

Because the record does not contain any current VA or other examination for the purpose of determining whether the veteran currently suffers from a pseudoarthrosis or other condition which could be related to the condition noted in service, VA's statutory duty to assist here "includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability is a fully informed one." *Green,* 1 Vet.App. at 124; *see Wilson (Lawrence) v. Derwinski,* 2 Vet.App. 16, 21 (1991); *Parker v. Derwinski,* 1 Vet.App. 522, 526 (1991); *Moore (Howard) v. Derwinski,* 1 Vet.App. 401, 405 (1991); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991).

### III. Conclusion

Upon consideration of the record, the Secretary's motion for summary affirmance, and the appellant's informal brief, the Court vacates the April 29, 1991, BVA decision and remands the matter to the Board for prompt readjudication, consistent with this decision, after the conduct of an examination of the appellant. "On remand, the appellant will be free to present additional evidence and argument". *Quarles v. Derwinski,* 3 Vet.App. 129 (1992). The Court expects the Board on remand to reexamine the evidence of record, seek appropriate additional evidence, and issue a new decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C.A. §§ 5107(a), 7104(a), (d)(1) (West 1991); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new BVA decision is mailed to the appellant.

VACATED AND REMANDED.