﻿Citation Nr: AXXXXXXXX
Decision Date: 06/27/19 Archive Date: 06/27/19

DOCKET NO. 181201-1461
DATE: June 27, 2019

ORDER

Entitlement to an effective date earlier than February 12, 2015, for an increased rating for a right ankle disability is denied.

Entitlement to an effective date earlier than February 12, 2015, for an increased rating for a back disability is denied.

Entitlement to an effective date earlier than February 12, 2015, for service connection for right lower extremity radiculopathy is denied.

REMANDED

Entitlement to service connection for a psychiatric disability, to include as secondary to service-connected back, headache, and ankle disabilities, is remanded.

Entitlement to service connection for sleep apnea, to include as secondary to service-connected back, headache, and right knee disabilities, is remanded.

Entitlement to service connection for a gastrointestinal disability, to include Barret’s Esophagus, stomach indigestion, and GERD, is remanded.

Entitlement to service connection for vertigo, to include as secondary to headaches and tinnitus, is remanded. 

Entitlement to a rating in excess of 40 percent for a back disability is remanded.

Entitlement to a rating in excess of 30 percent for headaches is remanded.

Entitlement to an initial rating in excess of 10 percent for right leg radiculopathy is remanded.

Entitlement to a rating in excess of 10 percent for a right ankle sprain is remanded. 

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

FINDINGS OF FACT

1. VA first received the Veteran’s claim for an increased rating for ankle and back disabilities on February 12, 2015. The Veteran established service connection for right lower extremity radiculopathy in connection with the back disability during the adjudication of that claim. 

2. No earlier communication of record constitutes a claim for an increased rating for a back or ankle disability or service connection for right lower extremity radiculopathy, and the evidence does not show a factually ascertainable increase in the back or ankle disabilities during the year prior to the claim for increase.

CONCLUSIONS OF LAW

1. The criteria for entitlement to an effective date earlier than February 12, 2015, for an increased rating for a right ankle disability have not been met. 38 U.S.C. §§ 5101, 5110; 38 C.F.R. §§ 3.151, 3.155, 3.400. 

2. The criteria for entitlement to an effective date prior to February 12, 2015, for an increased rating for a back disability are not met. 38 U.S.C. §§ 5101, 5110; 38 C.F.R. §§ 3.151, 3.155, 3.400.

3. The criteria for an effective date earlier than February 12, 2015, for service connection for right lower extremity radiculopathy have not been met. 38 U.S.C. §§ 5101, 5110; 38 C.F.R. §§ 3.151, 3.155, 3.400.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from February 2008 to October 2012. This matter comes before the Board of Veterans’ Appeals (Board) from a September 2015, November 2016, and May 2017 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Seattle, Washington.

The Board notes that the February 2016 notice of disagreement included an earlier effective date claim for service-connected headaches. As the assigned rating for that disability remains unchanged during the appeal period, and the disagreement was to the rating assigned, the Board has characterized this issue as an increased rating claim. 

Effective Date

Except as otherwise provided, the effective date of an evaluation and award of compensation based on an original claim or a claim reopened after final disallowance, will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400. For increases in disability compensation, the effective date shall be the earliest date as of which it is factually ascertainable based on all the evidence of record that an increase in disability occurred if a claim or intent to file a claim is received within one year following that date. Otherwise, the effective date of increase shall be the date of receipt of the claim. When medical records indicate an increase in disability, receipt of those medical records may be used to establish effective dates for retroactive benefits based on the facts found of an increase in disability only if a claim for increase is filed within one year of the date of the medical report. 38 U.S.C. § 5110; 38 C.F.R. § 3.400(o).

At the time the increase was made, the regulation provided that the effective date of an increase in disability compensation was the earliest date as of which it is factually ascertainable that an increase in disability occurred if the claim is received within one year of that date. Otherwise, the effective date was the date of receipt of the claim. 38 C.F.R. § 3.400(o).

A specific claim in the form prescribed by VA must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.151(a). A claim is a written communication requesting a determination of entitlement or evidencing a belief in entitlement to a specific benefit. 38 C.F.R. § 3.1(p). If a formal claim is received within one year of an informal claim, it will be considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155. To determine when a claim was received, the Board must review all communications in the claims file that may be construed as an application or claim. Quarles v. Derwinski, 3 Vet. App. 129 (1992).

The Board finds that neither regulation supports the assignment of any earlier effective date.

1. Entitlement to an effective date earlier than February 12, 2015, for an increased rating for an ankle disability

The Veteran seeks an effective date February 12, 2015, for an assignment of an increased 10 percent rating for an ankle disability.

A review of the record shows on February 12, 2015, the Veteran submitted a formal claim for an increased rating for an ankle disability. 

In May 2014, private treatment records showed normal muscle strength testing and pain the that was rated 3 out of 10. The Veteran reported intermittent swelling. 

At a July 2015 VA examination, the Veteran’s range of motion testing showed dorsiflexion to 10 degrees and plantar flexion to 45 degrees. There was objective evidence of mild tenderness. The Veteran did not have additional loss of function or range of motion after repetitive use testing. The examiner noted the Veteran would have some difficulty walking on uneven footing. 

Following a July 2015 VA examination, a September 2015 rating decision assigned a 10 percent rating for the right ankle disability, with an effective date of February 12, 2015, the date of the claim for increase. 

The Board finds that entitlement to an effective date earlier than February 12, 2015, for an increased rating for an ankle disability is not warranted. The Veteran’s formal claim for an increased rating for an ankle disability was received by VA on February 12, 2015. There was no formal claim, informal claim, or written intent to file a claim for increased rating for an ankle disability prior to that date. The evidence does not show evidence to support a finding that an increase in severity was factually ascertainable within one year prior to the July 2015 examination to warrant any earlier increase. An effective date of February 12, 2015, was assigned, as that was the date of the claim for an ankle disability. The Veteran has not submitted any evidence indicating an earlier effective date is warranted, or showing that any claim prior to February 12, 2015, was submitted for an increased rating for an ankle disability. 

Accordingly, the Board finds that the preponderance of the evidence is against the claim for an effective date earlier than February 12, 2015, for an increased rating for a right ankle disability, and the claim must be must be denied. 

2. Entitlement to an effective date earlier than February 12, 2015, for an increased rating for a back disability

The Veteran seeks an effective date prior to February 12, 2015, for the assignment of an increased 40 percent rating for a back disability.

A review of the record shows on February 12, 2015, the Veteran submitted a claim for an increased rating for a back disability. 

In May 2014, private physical therapy records showed moderate loss range of motion in flexion and a significant loss of motion in extension, but measurements were not provided. The Veteran reported stiffness and weakness. 

In February 2015, the Veteran reported that he could not sit, stand, or lay down without discomfort, and that he experienced throbbing pain.

At a July 2015 VA examination, the Veteran’s range of motion testing showed forward flexion to 20 degrees (painful motion at 10 degrees), extension to 10 degrees (painful motion at 10 degrees), right lateral flexion to 30 degrees (painful motion at 30 degrees), left lateral flexion to 10 degrees (painful motion at 10 degrees), right lateral rotation to 10 degrees (painful motion at 10 degrees), and left lateral rotation to 20 degrees (painful motion at 20 degrees). He could perform repetitive use testing and his range of motion was not reduced. The Veteran had functional loss in the form of less movement than normal and pain on movement. There was general lumbar tenderness. The Veteran had guarding that was severe enough to result in an abnormal gait. The examiner noted that although Veteran was limited in repetitive bending, pushing, and pulling, he had normal strength testing. 

Following the July 2015 VA examination, a September 2015 rating decision assigned an increased rating of 40 percent rating for the back disability, effective February 12, 2015. 

The Board finds that entitlement to an effective date earlier than February 12, 2015, for an increased rating for a back disability is not warranted. The Veteran’s formal claim for an increased rating for a back disability was received by VA on February 12, 2015. There was no formal claim, informal claim, or written intent to file a claim for a back disability. The evidence does not show evidence to support a finding that an increase in severity was factually ascertainable within one year prior to the July 2015 examination to warrant any earlier increase. The only evidence within that time period did not provide adequate detail to support the assignment of any higher rating. An effective date of February 12, 2015, was assigned, as that was the date of the claim for back disability. The Veteran has not submitted any evidence indicating an earlier effective date is warranted, or showing that any claim prior to February 12, 2015, was submitted for an increased rating for a back disability. 

Accordingly, the Board finds that the preponderance of the evidence is against the claim for an effective date earlier than February 12, 2015, for an increased rating for a back disability, and the claim must be must be denied. 

3. Entitlement to an effective date earlier than February 12, 2015, for service connection for right lower extremity radiculopathy

The Veteran contends that an effective date February 12, 2015, for the award of service connection for right lower extremity radiculopathy is warranted. He does not make any specific contentions as to when he believes the award of service connection should have been effectuated. 

In a February 2015, the Veteran requested a higher rating for a service-connected back disability. The claim was received by VA on February 12, 2015. 

In September 2015, the Agency of Original Jurisdiction established service connection for right lower extremity radiculopathy and effectuated the award as of February 12, 2015, the date of receipt of the claim for an increased rating for a back disability. 

The Veteran has made no specific argument as to why an earlier effective date for the award of service connection for right lower extremity radiculopathy is warranted. The evidence does not show any claim, formal or informal, was received for service connection for the claimed disability prior to the effective date assigned. 

As right lower extremity radiculopathy was established as secondary to the Veteran’s increased rating claim for his back disability, the Board concludes that the appropriate effective date for the award of service connection for right lower extremity radiculopathy is February 12, 2015, the date of receipt of the claim for an increased rating for a back disability. 38 U.S.C. § 5110 (b)(1); 38 C.F.R. § 3.400 (b)(2)(i). 

REASONS FOR REMAND

1. Entitlement to service connection for a psychiatric disability, to include as secondary to service-connected back, headache, and ankle disabilities, is remanded.

The Veteran was provided VA examination in March 2017 to assess the nature and etiology of a psychiatric disability, to specifically include, as secondary other service-connected disabilities. Although the VA examiner noted that the Veteran was diagnosed with adjustment disorder in June 2013, the examiner reported that the Veteran had never been diagnosed with or treated for any psychiatric disabilities. The examiner found that a diagnosis of depression was not warranted, but did not reconcile the previous diagnosis of adjustment disorder. The Board finds the examination to be contradictory, and thus incomplete. When medical evidence is incomplete, VA must supplement the record by seeking an advisory opinion or ordering another medical examination. Colvin v. Derwinski, 1 Vet. App. 171 (1991); Hatlestad v. Derwinski, 3 Vet. App. 213 (1992). Therefore, the Board finds a new VA examination that accurately considers all the evidence of record is necessary.

2. Entitlement to service connection for sleep apnea to include as secondary to service-connected back, headache, and right knee disabilities, is remanded.

The record contains a diagnosis of sleep apnea and shows trouble sleeping during service. The Veteran has was provided an October 2018 VA examination to assess the nature and etiology of sleep apnea that found sleep apnea was not present during service or caused by service-connected disabilities. That examination did not consider whether sleep apnea was aggravated by service-connected disabilities, and is thus incomplete. In addition, the Veteran’s representative contends the Veteran’s disability is related to service-connected disabilities and an April 2018 private opinion related sleep apnea to obesity which the examiner found was caused by service-connected disabilities. VA’s duty to assist includes a duty to provide a medical examination or obtain a medical opinion where it is deemed necessary to make a decision on the claim. 38 U.S.C. § 5103A(d); 38 C.F.R. § 3.159(c)(4); Robinette v. Brown, 8 Vet. App. 69 (1995). When the medical evidence is inadequate, VA must supplement the record by seeking an advisory opinion or ordering another medical examination. Colvin v. Derwinski, 1 Vet. App. 171 (1991); Hatlestad v. Derwinski, 3 Vet. App. 213 (1992). Therefore, a remand is necessary to obtain a VA examination.

3. Entitlement to service connection for a gastrointestinal disability, to include Barret’s Esophagus, stomach indigestion, and GERD, is remanded.

The record shows the Veteran has a diagnosis of Barrett’s Esophagus. The Veteran has not been provided a VA examination to assess the nature and etiology of the gastrointestinal disability. VA’s duty to assist includes a duty to provide a medical examination or obtain a medical opinion where it is deemed necessary to make a decision on the claim. 38 U.S.C. § 5103A(d); 38 C.F.R. § 3.159(c)(4); Robinette v. Brown, 8 Vet. App. 69 (1995). When the medical evidence is inadequate, VA must supplement the record by seeking an advisory opinion or ordering another medical examination. Colvin v. Derwinski, 1 Vet. App. 171 (1991); Hatlestad v. Derwinski, 3 Vet. App. 213 (1992). Therefore, a remand is necessary to obtain a VA examination.

4. Entitlement to service connection for vertigo, to include as secondary to headaches and tinnitus, is remanded.

The record shows the Veteran has a vertigo diagnosis. The Veteran has not been provided a VA examination to assess the nature and etiology of the disability. VA’s duty to assist includes a duty to provide a medical examination or obtain a medical opinion where it is deemed necessary to make a decision on the claim. 38 U.S.C. § 5103A(d); 38 C.F.R. § 3.159(c)(4); Robinette v. Brown, 8 Vet. App. 69 (1995). When the medical evidence is inadequate, VA must supplement the record by seeking an advisory opinion or ordering another medical examination. Colvin v. Derwinski, 1 Vet. App. 171 (1991); Hatlestad v. Derwinski, 3 Vet. App. 213 (1992). Therefore, a remand is necessary to obtain a VA examination.

5. Entitlement to a rating in excess of 30 percent for headaches is remanded.

The Board finds that more contemporaneous VA examinations are required to properly assess the current severity of the Veteran’s headache disability. The Veteran was most recently provided a VA examination for headaches in July 2015. While, generally, the mere passage of time is not a sufficient basis for a new examination, further allegations of a worsening condition have been set forth by the Veteran since the prior examination. Palczewski v. Nicholson, 21 Vet. App. 174 (2007). Specifically, the Veteran’s representative suggested the Veteran’s prostrating attacks are more severe. Therefore, remand is necessary to obtain a current examination.

6. Entitlement to a rating in excess of 40 percent for a back disability is remanded.

7. Entitlement to an initial rating in excess of 10 percent for right leg radiculopathy is remanded.

The Veteran was provided a VA examination in July 2015 for a back disability and radiculopathy. The Board finds the examination to be incomplete because passive range of motion testing was not included in the findings. When medical evidence is incomplete, VA must supplement the record by seeking an advisory opinion or ordering another medical examination. Colvin v. Derwinski, 1 Vet. App. 171 (1991); Hatlestad v. Derwinski, 3 Vet. App. 213 (1992). In addition, the Veteran’s representative contends the Veteran’s flare-ups and intermittent pain were not addressed. Therefore, the Board finds a new VA examination that accurately considers all the evidence of record is necessary.

8. Entitlement to a rating in excess of 10 percent for a right ankle sprain is remanded.

The Board finds that more contemporaneous VA examinations are required to properly assess the current severity of a right ankle disability. The Veteran was most recently provided with a VA examination of the ankle in July 2015. While, generally, the mere passage of time is not a sufficient basis for a new examination, further allegations of a worsening condition have been set forth by the Veteran since the prior examination. Palczewski v. Nicholson, 21 Vet. App. 174 (2007). Specifically, an August 2015 private evaluation showed the Veteran had a reduced range of motion. Therefore, remand is necessary to obtain a current examination.

9. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

The Veteran’s claim for TDIU intertwined with the issues of entitlement to higher ratings. Harris v. Derwinski, 1 Vet. App. 180 (1991) (where a claim is inextricably intertwined with another claim, the claims must be adjudicated together). Therefore, further consideration of the claim for TDIU must be deferred. 

The matters are REMANDED for the following action:

1. Schedule the Veteran for a VA examination to determine the etiology of any psychiatric disability, to include depression or adjustment disorder. The examiner must review the claims file and should note that review in the report. All indicated tests and studies must be performed. The examiner should diagnose every identified psychiatric disability. The examiner must address the Veteran’s lay statements and other lay statements regarding onset, in-service symptoms, and continuity of symptomatology since service. The examiner should provide a complete rationale for all opinions and conclusions and reconcile the opinions with all pertinent evidence of record. 

(a.) The examiner should diagnose all psychiatric disabilities present. The examiner should specifically state whether a diagnosis of depressive disorder or adjustment disorder is warranted and should reconcile the diagnosis with the other diagnoses of record.

(b.) Is at least as likely as not (50 percent probability or greater) that any identified psychiatric disability had its onset during active service or is related to any incident of service? 

(c.) Is at least as likely as not (50 percent probability or greater) that any identified psychiatric disability is proximately due to any service-connected disabilities, to specifically include a service-connected back disability? 

(d.) Is at least as likely as not (50 percent probability or greater) that any identified psychiatric disability has been aggravated (increased in severity beyond the natural progress of the disorder) by any service-connected disabilities, to specifically include a service-connected back disability?

2. Schedule the Veteran for a VA examination to determine the nature and etiology of sleep apnea. The examiner must review the claims file and should note that review in the report. All tests and studies deemed necessary by the examiner must be performed. A complete history should be elicited from the Veteran. The examiner should consider any lay reports of symptoms during and after service. A complete rationale should be provided for all opinions and conclusions. 

(a.) The examiner is requested to provide an opinion on whether it at least as likely as not (50 percent or greater probability) that the Veteran has sleep apnea that is related to service or any event during service, or manifested to a compensable degree within one year following separation from service. 

(b.) The examiner should opine whether it is at least as likely as not (50 percent or greater probability) that any sleep apnea is due to, the result, or caused by any service-connected disability, to specifically include the service-connected back disability, ankle, knee, and lower extremity radiculopathy.

(c.) The examiner should opine whether it is at least as likely as not (50 percent or greater probability) that the Veteran’s sleep apnea is aggravated (permanently increased in severity beyond the natural progress of the disorder) by the service-connected disabilities.

(d.) The examiner should consider the April 2018 private opinion and should opine whether it is at least as likely as not that obesity is the result of the service-connected disabilities, and if so, whether it is at least as likely as not that sleep apnea is caused or aggravated by obesity that is the result of the service-connected disabilities.

3. Schedule the Veteran for a VA examination to determine the nature and etiology of any gastrointestinal disability. The examiner must review the claims file and should note that review in the report. All tests and studies deemed necessary by the examiner must be performed. A complete history should be elicited from the Veteran. The examiner is requested to diagnose all gastrointestinal disabilities. The examiner must provide an opinion on whether it at least as likely as not (50 percent or greater probability) that the Veteran has a gastrointestinal disability, to include Barrett’s esophagus, that was caused by or is related to service or any incident during service. The examiner should consider any lay reports of symptoms during and after service. A complete rationale should be provided for all opinions and conclusions. 

4. Schedule the Veteran for a VA examination to determine the etiology of any vertigo disability, to include a diagnosis. The examiner must review the claims file and should note that review in the report. All indicated tests and studies must be performed. The examiner must address the Veteran’s lay statements and other lay statements regarding onset, in-service symptoms, and continuity of symptomatology since service. The examiner should provide a complete rationale for all opinions and conclusions and reconcile the opinions with all pertinent evidence of record.

(a.) The examiner should opine whether it is at least as likely as not (50 percent or greater probability) that vertigo is related to service or any event during service, or manifested to a compensable degree within one year following separation from service. 

(b.) The examiner should opine whether it is at least as likely as not (50 percent or greater probability) that any vertigo is due to, the result, or caused by any service-connected disability, to specifically include the service-connected headaches and tinnitus.

(c.) The examiner should opine whether it is at least as likely as not (50 percent or greater probability) that the Veteran’s vertigo is aggravated (permanently increased in severity beyond the natural progress of the disorder) by the service-connected disabilities.

5. Schedule the Veteran for a VA examination to determine the current severity of a service-connected headache disability. The examiner must review the claims file and should note that review in the report. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner must review the record and should note that review in the report. A rationale for all opinions should be provided. The examiner should:

(a.) Report the number and frequency of characteristic prostrating attacks, if any, during all relevant periods and any associated economic inadaptability as a result of the headaches. 

(b.) Comment upon the frequency and severity of the headache disability. 

(c.) Opine whether it is at least as likely as not (50 percent or greater probability) that the Veteran is unable to secure or follow a substantially gainful occupation due to the combined effects of the service-connected disabilities. If the Veteran is felt capable of work despite the service-connected disabilities, the examiner should describe what type of work and what accommodations would be necessary due to the service-connected disabilities. 

6. Schedule the Veteran for VA orthopedic and neurological examinations by an appropriate physician. The examiner must review the claims file and should note that review in the report. All indicated tests and studies should be accomplished, and all clinical findings must be reported in detail. The examiner should state all examination findings, with the rationale for the comments and opinions expressed. 

(a.) The physician must identify the existence, and frequency or extent, as appropriate, of all neurological symptoms associated with the lumbar spine disability, to include radiculopathy of the right lower extremity.

(b.) Concerning any neurological findings, the examiner should state what nerve is affected and whether there is complete or incomplete paralysis of the nerve. If incomplete paralysis is present, the examiner should provide an opinion as to whether it is mild, moderate, moderately severe, or severe, and should state whether there are sensory, motor, or strength loss manifestations.

(c.) The physician must conduct range of motion testing for active and passive motion and weight-bearing and nonweight-bearing of the thoracolumbar spine, expressed in degrees.

(d.) The examiner should provide ranges of thoracolumbar spine motion with specific findings as to whether there is objective evidence of pain on motion, weakened motion, excess motion, fatigability, or incoordination. If pain on motion is observed, the physician should indicate the point at which pain begins. In addition, the physician should indicate whether, and to what extent, the Veteran experiences functional loss of the thoracolumbar spine due to pain or any of the other symptoms noted above during flare-ups or with repeated use. To the extent possible, the examiner should express any additional functional loss in terms of additional degrees of limited motion.

(e.) The physician should comment as to the existence and frequency of any incapacitating episodes of intervertebral disc syndrome, periods of acute signs and symptoms due to intervertebral disc syndrome that require bed rest prescribed by a physician and treatment by a physician. If the Veteran has incapacitating episodes associated with the lumbar spine disability, the examiner should specify their frequency and duration.

7. Schedule the Veteran for a VA examination to determine the current severity of service-connected right ankle disability. The examiner must review the claims file and should note that review in the report. Any studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner should provide a complete rationale for any opinions provided. The examiner should test the range of motion in active motion, passive motion, weight-bearing, and non-weight-bearing, for both ankles. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, the examiner should clearly explain why. The examiner should opine whether any pain associated with the right ankle disability, could significantly limit functional ability during flare-ups or during periods of repeated use, noting the degree of additional range of motion loss due to pain on use or during flare-ups. The examiner must attempt to ascertain adequate information concerning the functional effects of the right ankle disability during flare-ups, such as information regarding frequency, duration, characteristics, severity, or functional loss. The examiner should state whether there is any additional limitation of function due to excess motion, painful motion, weakened motion, fatigability, or incoordination. The examiner should state whether ankylosis is shown.

 

Harvey P. Roberts

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. Kass, Associate Counsel