Rowena G. HYDER, formerly Rowena G. Hernandez, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–254.

United States Court of Veterans Appeals.

Submitted Dec. 3, 1990.

Decided April 15, 1991.

Timothy D. Geiszler, was on the brief, Missoula, Mont., for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Craig M. Kabatchnick were on the brief, Washington, D.C., for appellee.

Before KRAMER, FARLEY and STEINBERG, Associate Judges.

FARLEY, Associate Judge:

The veteran, Rowena G. Hyder, seeks non-service-connected pension benefits for the disabling effects of a back condition. 38 U.S.C. §§ 502, 521. There is no disagreement among the parties as to the existence of the back condition; the issue is the degree of pain and disability resulting from that condition. Concluding that the veteran's condition was not so severe as to preclude gainful employment, the Board of Veterans' Appeals (BVA) affirmed the denial of the veteran's claim for a non-service-connected pension. However, the BVA decision does not contain the statement of "reasons or bases" for this conclusion that is required by 38 U.S.C. § 4004(d)(1). Moreover, a specialist examination by an orthopedist or a neurologist, as recommended by the Department of Veterans Affairs' own examining physician, was not conducted. For these reasons, the BVA decision is vacated and the case is remanded to permit a specialist examination and to allow the BVA to comply with 38 U.S.C. § 4004(d)(1) by providing a statement of the "reasons or bases" for its determinations.

## I.

The appellant, Rowena G. Hyder, served in the Navy from October 1965 to January 1967 during the Vietnam Era. The record contains references to three separate laminectomies which were performed after the veteran was discharged. The first procedure was performed in 1974 while the veteran was residing in Peru. R. at 42. A second surgery apparently was performed shortly thereafter, but the record is unclear as to when, where, why, and what was done. The third operation occurred in 1985 when the veteran suffered a large ruptured disc while lifting a stack of books at her job in a printing business. *Id.*

In June 1988, the veteran applied for non-service-connected pension benefits. The veteran was diagnosed by her personal physician as having "severe degenerative disc disease at multiple levels in lumbar, thoracic, and cervical spine." R. at 58. In the opinion of her physician, the veteran has reached " 'maximum healing,' although this is a problem that will bother her the rest of her life." R. at 59. He believes that the veteran is unable to sit or stand for longer than two hours during any work day and then only for one-half hour at a time. R. at 59–61. Due to the pain that she suffers "even with very minimal activity," R. at 59, her physician does not consider her a viable candidate for employment or physical therapy. The veteran also has a history of falling because of weakness in her left leg due to her back condition.

The Veterans' Administration (now the Department of Veterans Affairs) (VA) conducted an examination in January 1989. R. at 177–80. The veteran was able to bend so that her fingertips reached to 6″ off the floor, and the VA physician noted that her carriage, posture and gait were all normal. She had marked difficulty with deep knee bends due to the weakness in her left leg. The final diagnosis was: "1. Previous herniated lumbar vertebral disc; 2. Three previous operations on lower back with residual scar and recurrent lower back pain with nerve root sciatica to left lower extremity; 3. Mild to mod[erate] overw[eigh]t." R. at 180. The examining physician recommended that a further examination be conducted by an orthopedist or neurosurgeon, R. at 180, but this examination never took place.

A January 17, 1989, VA radiological report confirmed the diagnosis of degenerative disc disease: "IMPRESSION: 1) Post surgical changes at L4 & 5. 2) Fairly

severe degenerative disc disease at L4–5 & L5–S1 and to a lesser extent at L3–4. 3) Questionable minimal reverse spondylolisthesis of L4 on L5. 4) Fairly severe changes involving the posterior articular facets of L4–S1." R. at 181–182.

The veteran's claim for non-service-connected pension benefits was rejected by the Regional Office (RO) because: "The evidence does not establish disabilities of sufficient severity to prevent substantially gainful employment." R. at 185. The BVA affirmed the denial of the veteran's claim for non-service-connected pension benefits, stating:

> The veteran's principal disability is a back disorder which causes pain, limitation of motion and other problems. She has no other significant disability.... The veteran's back disorder is not so severe that it permanently precludes substantially gainful employment especially in view of her age, education and work experience.

*Rowena G. Hyder,* loc. no. 002668, at 7 (BVA Jan. 25, 1990). The BVA concluded that "[t]he veteran is neither 100% disabled nor permanently unemployable" because of her back condition. *Id.* An appeal to this Court followed.

### II.

▮▮▮ The veteran is seeking a non-service-connected pension under 38 U.S.C. § 521 (1988). To qualify for a pension under this section, a two-pronged test must be met. First, the veteran must have served during a period of war. Second, the veteran must be permanently and totally disabled from a non-service-connected disability. Section 521 provides in pertinent part:

> (a) The Secretary shall pay to each veteran of a period of war who meets the service requirements of this section (as prescribed in subsection (j) of this section) and who is permanently and totally disabled from non-service-connected disability and not the result of the veteran's willful misconduct, pension at the rate prescribed by this section, as increased

from time to time under section 3112 of this title.

> \*  \*  \*  \*  \*  \*

> (j) A veteran meets the service requirements of this section if such veteran served in the active military, naval, or air service—
> (1) for ninety days or more during a period of war....

38 U.S.C. § 521. "The term 'Vietnam Era' means the period beginning August 5, 1964, and ending on May 7, 1975." 38 U.S.C. § 101(29) (1988). The veteran's service from October 1965 to January 1967, during the Vietnam Era, satisfies the first prong of the statutory test.

The second prong of the test requires that the veteran be permanently and totally disabled. The statutory criterion used to determine permanent and total disability would appear to be more objective rather than subjective in nature in that it is based primarily on the "average person."

> (a) For the purposes of this chapter, a person shall be considered to be permanently and totally disabled if such person is sixty-five years of age or older or became unemployable after age 65, or suffers from—
> (1) any disability which is sufficient to render it impossible for the average person to follow a substantially gainful occupation, but only if it is reasonably certain that such disability will continue throughout the life of the disabled person.

38 U.S.C. § 502(a)(1) (1988).

However, unlike the controlling statute, it is not clear whether the applicable regulations contemplate an objective or a subjective standard. In its decision, the BVA noted that 38 C.F.R. §§ 3.321, 3.340, 3.342 and Part 4 governed its decision. *Hyder,* at 6. On the one hand, 38 C.F.R. § 3.340 (1990) appears consistent with 38 U.S.C. § 502(a) in that it establishes an objective test based upon the average person:

> (a) *Total disability ratings*—(1) *General.* Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average

person to follow a substantially gainful occupation.

38 C.F.R. § 3.340.

On the other hand, various provisions of 38 C.F.R. Part 4 appear to permit the determination to be based upon more subjective criteria. For example, 38 C.F.R. § 4.15 (1990) provides, in pertinent part, as follows:

> However, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effect of combinations of disability.

In a similar vein, 38 C.F.R. § 4.19 (1990) provides that "[a]ge, as such, is a factor only in evaluations of disability not resulting from service, i.e., for the purposes of pension." As this Court said in *Hatlestad v. Derwinski*, 1 Vet.App. 164, 167 (1991), we find "the regulatory provisions relating to unemployability and total disability to be a confusing tapestry for the adjudication of claims." Although *Hatlestad* involved a claim for compensation, the confusing tapestry analogy applies with equal force to this appeal of the denial of a claim for a non-service-connected pension. In addition, the relationship of these confusing regulatory provisions to § 502(a)(1) of the statute is also unclear.

The BVA's decision does not provide any assistance in resolving this confusion. Moreover, in the face of the objective "average person" standard established by statute, the BVA used subjective criteria unique to this claimant in order to reach its decision: "The veteran's back disorder is not so severe that it permanently precludes substantially gainful employment *especially in view of her age, education and work experience*." *Hyder*, at 7 (emphasis added.) The emphasized language may relate to an application on §§ 4.15 and 4.19, but this is also unclear. Moreover, the BVA reached this conclusion without including the requisite statement of reasons or bases which is necessary both to enable the claimant to understand the decision and to permit this Court to fulfill its judicial review function. Section 4004(d)(1) of title 38 provides:

> (d) Each decision of the Board shall include—
>
> (1) a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record....

38 U.S.C. § 4004(d)(1) (1988).

As we said in *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990), "the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations." Measured against this standard, we are compelled to agree with the veteran that the BVA's decision here must be overturned. The BVA has failed to provide a statement of the reasons or bases as required by § 4004(d)(1) for its conclusion that "[t]he veteran's back disorder is not so severe that it permanently precludes substantially gainful employment especially in view of her age, education and work experience." *Hyder*, at 7.

### III.

The VA's failure to have conducted an examination by a specialist as recommended by the VA examining physician also had a detrimental effect upon the adjudication of the veteran's claim. There is no question that the RO can "request additional medical opinions, examinations, or periods of hospital observation as may be necessary to furnish complete evidence on which rating decisions will be based." 38 C.F.R. § 3.327(d) (1990). Moreover, the Secretary is under a statutory duty to come to the aid of veterans who present well-grounded claims. "The Secretary shall assist such a claimant in developing the facts pertinent to the claim". 38 U.S.C. § 3007(a) (1988); *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990); *see also Green v.*

*Derwinski,* 1 Vet.App. 121, 123 (1991); *Littke v. Derwinski,* 1 Vet.App. 90, 91–93 (1990); *Akles v. Derwinski,* 1 Vet.App. 118, 121 (1991).

Notwithstanding the recommendation, the clear authority, and the statutory obligation to assist, the BVA concluded that the veteran was not entitled to the benefit of the "doctrine of reasonable doubt" under 38 U.S.C. § 3007(b) (1988), because "the evidence currently of record does not permit the Board to grant the benefit sought on this appeal." *Hyder,* at 6. The denial of the claim cannot be permitted to stand where, as here, the VA breached the statutory duty to assist by not conducting the supplemental examination recommended by its own physician.

### IV.

No doubt recognizing the void created by the absence of the required statement of "reasons or bases" and the incomplete state of the medical evidence, the Secretary's counsel proffers his own diagnosis: it is the veteran's weight which prevents her from holding gainful employment and which makes her ineligible for a non-service-connected pension. Br. at 19–20. However, the sole qualitative reference to weight in the record is an examination report on which the physician found the veteran to be "mod[erate] overw[eigh]t.," R. at 178, and included in the diagnosis the phrase "mild to mod[erate] overw[eigh]t." R. at 180. The record of this case is totally devoid of any authoritative medical discussion by either her personal physician, the VA physician, or the BVA of a causal relationship between the veteran's weight and her back condition.

■ Untroubled by this lack of authority, the Secretary's argument culminates with the following statement: "Given the appellant's age it should be taken into consideration that if she reduced her weight, and received further treatment for her back disability, her condition could in fact

improve over time, and should not, therefore, be considered permanent." *Id.* Lay hypothesizing, particularly in the absence of any supporting medical authority, serves no constructive purpose and cannot be considered by this Court. *See Gilbert,* at 55–57; *Murphy,* at 81; *Green,* at 124.

### CONCLUSION

For the reasons stated above, the January 25, 1990, decision of the BVA is VACATED and this case is REMANDED to enable the VA to conduct the examination by a specialist as recommended by the VA's examining physician and to provide the BVA with the opportunity to include a statement of the reasons or bases, including the statutory and regulatory bases, for its findings or conclusions.

*It is so Ordered.*