Danny L. DALTON, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 91–137.

United States Court of Veterans Appeals.

July 28, 1992.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The pro se appellant, veteran Danny L. Dalton, appeals from a December 4, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying him service connection for a low back disability and the residuals of a kidney injury. Because the Board breached its statutory duty to assist the veteran in the development of his claim and failed to provide an adequate statement of reasons or bases for its conclusions, its decision will be vacated and the matter remanded.

The veteran has recognized service from December 1983 to March 1984, from July 6 to July 20, 1985, and from June 15 to July 17, 1987. *Danny L. Dalton*, BVA 90–18415, at 2 (Dec. 4, 1990); R. at 30. He claims that while serving a period of annual training with the United States Army Reserve (R. at 28–31), he was injured in a jeep accident on July 6, 1985. He contends that his problems with chronic low back pain and urinary retention, on-going since his jeep injury, are a direct result of the accident.

Enlistment examinations for the Army Reserve on September 20, 1983, and for the Navy on March 30, 1987, both reported normal findings under the "SPINE, OTHER MUSCULOSKELETAL" and "GENITO–URINARY" categories (R. at 12, 52); at neither examination did the veteran give a history of urinary disorders or back pain (R. at 13–14, 53–54). X-rays of the veteran's lumbosacral spine, taken at St. Joseph Hospital on the day of the jeep accident, found no acute injury but revealed "a transitional vertebra with six lumbar-type vertebrae". R. at 84. X-rays from a private clinic taken July 25, 1988, at the request of Dr. D. Schlie, who examined the veteran at various times between July 1988 and May 1990, showed a similar defect. R. at 117. A Mercy Hospital medical record, dated July 7, 1985, one day after the accident, indicated that the veteran had arrived with complaints of lower abdominal pain and an inability to urinate; physicians extracted urine by catheter and released the veteran with a diagnosis of "possible urinary retention". R. at 25. On July 9, 1987, the veteran received a medical discharge from the Navy for mechanical low back pain; on the basis of a radiologist's findings, the medical board attributed the veteran's disorder to a congenital spine defect. R. at 35–36. Dr. Schlie reported consistent impressions of chronic low back strain, and at one point suggested that the disability was "possibly related" to the jeep accident. R. at 120.

The veteran received three Department of Veterans Affairs (VA) compensation and pension (C & P) examinations during April and May 1989. R. at 91–104. One physician gave a diagnosis of chronic low back pain with suggestion of disc degeneration and no obvious kidney abnormality at present (R. at 99); another, Dr. Joseph Wilson, diagnosed the veteran with "residuals of trauma to lumbar spine", opined that his "urinary symptoms are related to the accident", and suggested he be given a urometric examination (R. at 100); the third VA physician, Dr. William Boniface, noted neurological symptoms of a back disorder and diagnosed the veteran with an

injury to the cauda equina (R. at 102) (the collection of spinal roots that descend from the lower part of the spinal cord and occupy the vertebral canal below the cord, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 285 (27th ed. 1988)). Dr. Boniface, who reexamined the veteran on December 12, 1989, found that the veteran's condition had improved but reported: "there is evidence of L5–S1 neuropathy on the left, post traumatic". R. at 148. The veteran apparently never received a urometric examination as suggested by VA Dr. Wilson.

■ The Board's first error involves the breach of its statutory duty to assist the veteran in the development of his claim. Once a veteran submits a well-grounded claim, the Secretary of Veterans Affairs (Secretary) must assist the claimant in "developing the facts pertinent to" his or her claim. 38 U.S.C. § 5107(a) (formerly § 3007) (1991). *See Murphy v. Derwinski,* 1 Vet.App. 78, 81–82 (1990); *Hyder v. Derwinski,* 1 Vet.App. 221, 224–25 (1991).

In its December 4, 1990, decision, the BVA acknowledged that the veteran had "experienced urinary retention and abdominal and low back pain due to injuries he sustained in the jeep accident in July 1985". *Dalton,* BVA 90–18415, at 6. It acknowledged that a VA physician had suggested a relationship between a neurogenic bladder and the jeep injury, but nonetheless found the opinion insufficient "to establish that any chronic kidney damage occurred in July 1985, in [the] absence of contemporaneous evidence of continuity over the interval period of several years". *Ibid.* Nowhere in its decision does the Board note Dr. Wilson's suggestion that the veteran be given a urometric examination.

■ The duty to assist the veteran includes the obligation to request additional examinations when suggested by VA physicians. "The denial of the claim cannot be permitted to stand where, as here, the VA breached the statutory duty to assist by not conducting the supplemental examination recommended by its own physician." *Hyder,* 1 Vet.App. at 225. With its finding that the veteran had sustained kidney injuries and low back pain in the 1985 jeep injury, the BVA implicitly acknowledged that the veteran had presented "a plausible claim, one which is meritorious on its own or capable of substantiation". *Murphy,* 1 Vet.App. at 81. The submission of such a well-grounded claim activates the VA's duty to assist the veteran and thus to order the medical procedure suggested by the VA physician. Therefore, on remand the BVA must fulfill its duty to assist, making sure the veteran receives the urometric examination. Moreover, the examination must be one "which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability is a fully informed one." *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991); *see Wilson v. Derwinski,* 2 Vet.App. 16, 21 (1991); *Parker v. Derwinski,* 1 Vet.App. 522, 526 (1991); *Moore v. Derwinski,* 1 Vet.App. 401, 405 (1991); *EF v. Derwinski,* 1 Vet. App. 324, 326 (1991).

■ The Board's second error involves the failure to provide an adequate statement of reasons or bases for its decision, including an analysis of "the credibility or probative value of the evidence submitted by or on behalf of the veteran in support of his claim". *Gilbert v. Derwinski,* 1 Vet. App. 49, 59 (1990); *see* 38 U.S.C. § 7104(d)(1) (formerly § 4004); *Cousino v. Derwinski,* 1 Vet.App. 536, 540 (1991). Further, "the BVA is required to address thoroughly, analyze carefully, and *reconcile all* relevant evidence in the record." *Cousino, supra* (emphasis added).

In its 1990 decision, the Board found that the veteran has a congenital defect of the spine, that his back pain had preexisted his 1987 service, and that the pain resulting from his injury in service had been acute and transitory. It then concluded that chronic low back disability had preexisted military service and that neither back nor kidney disorders were incurred in or aggravated during active service or active duty for training. *Dalton,* BVA 90–18415, at 7–8. The Board thus implicitly concluded that the veteran's chronic back disability stems from a congenital spine defect or some other trauma. However, the Board points to no evidence of trauma or injury other than the jeep accident, nor any evidence attributing the veteran's current low

back pain to his congenital defect. Moreover, although the evidence shows that the veteran suffered back pain before his Naval enlistment in 1987, nothing in the record indicates that he experienced back troubles before his 1983 enlistment or even before his 1985 jeep accident. Finally, the Board erred in failing to reconcile its conclusions and findings with Dr. Schlie's impression that the veteran's back pain is possibly related to his jeep accident (R. at 120) and the diagnoses of VA Drs. Wilson and Boniface that the pain reflects the residuals of some kind of trauma or injury (R. at 100, 102). On remand the Board must include an analysis of the credibility or probative value of all the evidence of record, "accounting for the evidence it found to be persuasive and unpersuasive". *Gilbert, supra.*

Upon review of the record, the appellant's brief, and the Secretary's rather inexplicable motion for summary affirmance, it is held that the December 4, 1990, BVA decision is vacated and the matter remanded to the BVA for prompt readjudication, in accordance with this decision, on the basis of all the evidence and material of record and all applicable law and regulation, and issuance of a new decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C. §§ 7104(a) (formerly § 4004), 7104(d)(1), 5107(a); 38 C.F.R. § 4.40 (1991); *Gilbert, supra; Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). It is further held that summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new final Board decision is mailed to the appellant.

VACATED AND REMANDED.