Bobby N. GRANTHAM, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–17.

United States Court of Veterans Appeals.

Sept. 19, 1995.

Bobby N. Grantham, pro se.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and Richard Mayerick were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, pro se veteran Bobby Grantham, appeals a September 10, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying (1) an increased (compensable) rating for a service-connected eye disability (dark nodule in the nasal corner of the left eye), (2) reopening of a claim for service connection for a disability of the sternum (osteomyelitis with degeneration), and (3) entitlement to Department of Veterans Affairs (VA) non-service-connected pension based on permanent and total disability. *Bobby N. Grantham,* BVA 91–26911 (Sep. 10, 1991). The appellant's appeal as to his claim for service connection for a sternum disability was dismissed by the Court in August 1993 for lack of jurisdiction. For the reasons set forth below, the Court will dismiss the appeal as to the left-eye claim for lack of jurisdiction and will vacate the BVA decision as to the pension claim, and remand the matter to the Board for further development and readjudication consistent with this opinion.

## I. Left-eye claim
### A. Procedural History

In a May 24, 1993, order, the Court, sua sponte, raised the question whether it had

jurisdiction over, inter alia, the appellant's left-eye claim. The Court ordered the appellant, within thirty days thereafter, to show cause why the Court should not dismiss that claim for lack of jurisdiction. In June 1993, the appellant filed a response requesting that the Court compel the BVA and the VA Regional Office (RO) to submit all information necessary to confer jurisdiction on the Court in regard to his claim and that the Court exercise jurisdiction over the claim. In August 1993, the Court stayed proceedings on the appeal as to the appellant's pension and left-eye claims pending the Court's decision in the case of *West v. Brown.* The Court noted that it had jurisdiction over the pension claim but that "[r]esolution of the appellant's claim for an increased rating of his left-eye disability could affect the determination of his claim for [ ] pension". In January 1995, the Court issued an opinion in *West,* 7 Vet.App. 329 (1995) (en banc). The Court will now decide whether the left-eye claim should be dismissed under *West, supra.*

### B. Statement of Facts

The RO denied the veteran's original claim for service connection for his left-eye condition in February 1987. Supplemental (Suppl.) Record (R.) at 37–38; R. at 86. He filed a Notice of Disagreement (NOD) as to this decision on July 29, 1987. Second Suppl.R. at 1–9; *see* R. at 86. After a September 1987 personal hearing, on December 22, 1987, the VARO granted service connection for the veteran's eye disability and assigned a 0% rating. Suppl.R. at 40–41; R. at 86. In August 1988, the veteran requested another personal hearing on several issues, including his "eye condition". R. at 64, 87. This hearing was held on December 13, 1988, before the RO. R. at 68, 87. At the hearing, the hearing officer stated that the "issues presently under consideration include . . . a compensable evaluation for service-connected eye disorder", and the veteran testified under oath about the problems he was then experiencing. R. at 69. A July 1989 hearing officer's decision concluded that a compensable rating was not warranted and that the December 1987 RO decision granting the noncompensable rating for the left-eye condition was confirmed and continued. R. at 82,

87. In August 1989, the RO issued a Statement of the Case (SOC) regarding, inter alia, the claim for a compensable evaluation of the veteran's service-connected left-eye condition. R. at 84–89.

In September 1989, the veteran asked that his pension claim be reopened, and requested copies of "the ratings assigned for my disabilities" and "an additional 90 days" within which to file his VA Form 1–9, Substantive Appeal to the BVA (1–9 Appeal). R. at 94 (it is unclear to which claims the request refers but it is apparently to the pension claim). That same month, his request for an extension was granted. *Ibid; see* R. at 102.

On January 24, 1990, the veteran filed with the RO a letter stating that he "disagree[s] with the decision made on my eye condition", and that he "need[ed] a Statement of these cases", "the test that proves my eye condition is 0%", and "copies of the evidence used to make a decision in my case". R. at 98. He stated that he needed this information to "complete [his] appeal". *Ibid.* In February 1990, the RO issued an SOC regarding the veteran's pension claim (R. at 101), and in March 1990 issued a Supplemental SOC (SSOC) (because additional information was submitted by the veteran) which stated that the issues were entitlement to pension, an evaluation higher than 30% for service-connected post-traumatic stress disorder, and service connection for pustular lesions on palms and soles of feet. R. at 107. The SSOC further stated: "The issues of compensable evaluation for service-connected left eye condition and entitlement to service connection for osteomyelitis of sternum are *already in appeal status.*" *Ibid.* (emphasis added).

The veteran, in March 1990, filed with the RO a 1–9 Appeal, as to, inter alia, his claim for "[e]ye problems"; also contained on the form was a written expression of disagreement with, inter alia, the 0% rating for his left-eye disability. R. at 112. An April 1990 RO decision on appeal stated that an appeal had been taken from the December 1987 RO decision for, inter alia, a compensable evaluation for the left-eye condition, and confirmed that previous decision. Suppl.R. at 42. In a

January 1991 BVA decision, the Board determined that it had jurisdiction over the veteran's left-eye claim and remanded the case to the RO so that the veteran could be furnished an SSOC that included a summary of pertinent law and regulations (regarding claims, other than the eye condition, that were also on appeal). R. at 126–27. In February 1991, the RO issued an SSOC. R. at 129–32. In the September 1991 BVA decision here on appeal, the Board, inter alia, denied a compensable evaluation for the veteran's left-eye disability. *Grantham,* BVA 91–26911 at 8.

### C. Analysis

 This Court's appellate jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski,* 928 F.2d 392, 393–94 (Fed. Cir.1991); *Skinner v. Derwinski,* 1 Vet.App. 2 (1990). The Court has jurisdiction to review only those final BVA benefits decisions prior to which an NOD was filed on or after November 18, 1988, as to an underlying decision of an RO or other agency of original jurisdiction. *See* Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note). The Court's opinion in *Hamilton v. Brown* clearly established that "[t]here can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant", *Hamilton,* 4 Vet. App. 528, 538 (1993), *aff'd* 39 F.3d 1574, 1584–85 (Fed.Cir.1994). This case presents a question whether under *West* an original NOD disagreeing with an RO's denial of service connection for a particular disability is the only valid NOD such that a subsequent RO adjudication (prior to the issuance of an SOC and the filing of a 1–9 Appeal) granting service connection and assigning a rating would be part of the case to which the original NOD applied, and a request for a higher disability rating thus would not constitute a separate claim as to which a separate NOD may be filed.

In *West,* the veteran's claim for VA disability compensation had been denied in March 1987. In January 1988, he filed an NOD, and subsequently a VARO issued an SOC. In September 1988, the BVA remanded the claim. In March and December 1989, the RO continued the denial of service connection for the claim. In June 1990, the BVA granted entitlement to service connection and returned the claim to the RO for assignment of a disability rating. In July 1990, the RO assigned a rating and an effective date. In September 1990, the veteran filed an "NOD" as to the July 1990 RO decision. In March 1992, the BVA awarded an earlier effective date but denied a higher rating than the RO had assigned. The veteran appealed the March 1992 BVA decision to this Court.

In *Hamilton,* the Court held that its jurisdiction requires that the appellant file a valid NOD as to the case on or after November 18, 1988 (*see* VJRA, § 402), and that the NOD initiating the original appeal of the case determines whether this Court has jurisdiction. *Hamilton,* 4 Vet.App. at 538. Reiterating this holding, the en banc Court in *West* held that the Court lacked jurisdiction to hear an appeal of the March 1992 BVA decision because the NOD which "initiated the original appeal of the case to the BVA" was filed in January 1988, and "all subsequent adjudications of th[e] disability claim, including the rating and the effective date ... elements, were part of the case to which the [pre-November 18, 1988,] NOD applied." *West,* 7 Vet.App. at 331. The Court concluded that after the BVA reverses an RO decision on service connection and returns the case to the RO for adjudication of "the other essential elements" (rating, effective date), these further adjudications of the case "are inextricably part of the case originally filed and are extensions of the appeal that was filed." *West,* 7 Vet.App. at 332; *but see id.* at 333–39 (Steinberg and Kramer, JJ., dissenting).

In the instant case, the veteran filed an NOD in July 1987 as to the RO's denial of service connection for his claim; in December 1987, the RO granted service connection

and assigned a 0% disability rating. Although he had filed his NOD before November 18, 1988, as to the RO's denial of service connection for his left-eye disability, he also expressed disagreement in December 1988 and January 1990 with the December 1987 RO decision assigning a 0% rating. Under the binding holding in *West, supra,* the Court lacks jurisdiction to hear an appeal of the September 1991 BVA decision because the NOD which "initiated the original appeal of the case to the BVA" was filed in July 1987, and the December 1987 RO decision which awarded the rating, as well as the July 1989 hearing officer and April 1990 RO decisions, were subsequent adjudications of the same disability claim and "were part of the case to which the [July 1987] NOD applied." *West,* 7 Vet.App. at 331. Neither the December 1988 testimony nor the January 1990 letter expressing disagreement can confer jurisdiction on this Court because, under *Hamilton, supra,* the NOD that initiated the original appeal as to a particular claim controls this Court's jurisdiction until a final RO or BVA decision has been rendered in the matter (or the appeal has been withdrawn by the claimant), and because under *West,* the December 1987 RO decision was not a final action with respect to the veteran's appeal to the BVA. *West,* 7 Vet.App. at 332. Accordingly, the Court must dismiss the appeal.

We note that no statement or letter by the veteran subsequent to the December 1987 RO decision could be construed as an original claim with respect to his service-connected eye disorder as to the adjudication of which he could have filed a separate jurisdiction-conferring NOD. *See Ardison v. Brown,* 6 Vet.App. 405, 407 (1994) (claim for increased rating of previously service-connected condition is original claim); *Proscelle v. Derwinski,* 2 Vet.App. 629, 631 (1992) (same). Until such time as the veteran had obtained a *final* decision on his left-eye claim, he could not have commenced a new claim for a rating increase. *Cf.* 38 U.S.C. § 7105(b)(1) (NOD filed within one year from date of mailing of notice of initial review or determination is timely filed). The veteran's July 1987 NOD initiated appellate review of the left-eye claim, and that appellate review within VA included the December 1987 RO decision

awarding service connection and a noncompensable rating. *See Hamilton,* 39 F.3d at 1582 (appellate review initiated by an NOD) (citing 38 U.S.C. § 7105(a)). It also included all subsequent RO adjudications relating to that claim and leading up to and predating the final BVA decision on the claim, i.e., the September 1991 BVA decision, because those adjudications were "inextricably part of the case originally filed" and were an "extension of the appeal that was filed." *West,* 7 Vet. App. at 332. Because the December 1987 RO decision did not award the veteran the maximum amount of benefits available, it did not constitute a final decision. *See AB v. Brown,* 6 Vet.App. 35, 38 (1993) ("on a claim for an original or an increased rating, the claimant will generally be presumed to be seeking the maximum benefit allowed by law and regulation, and it follows that such a claim remains in controversy where less than the maximum available benefit is awarded"). Consequently, the December 1987 RO decision did not abrogate the then-pending appeal, and no new jurisdiction-conferring NOD could have been filed as to a subsequent RO decision in connection with that claim, which was still on appeal to the BVA.

## II. Non-service-connected Pension

### A. Background

The veteran served on active duty in the U.S. Army from August 1967 to August 1969, including a tour of duty for nearly one year in Vietnam as an infantryman. R. at 1. In his induction medical examination report, his health was reported as normal. R. at 2–3, 6–8. Service medical records (SMRs) show that the veteran was treated for malaria and "sterno clavicular arthritis", as a residual of an "old fracture" of "left clavicae" while in service. R. at 10–11, 14, 15. After the treatment for arthritis, the veteran was found qualified for "duty with limitations" and assigned "[c]ode C: no heavy lifting or prolonged walking with pack". R. at 15. At the separation examination, no abnormalities were noted. R. at 24–25. After separation the veteran worked as a truck driver. R. at 59.

The veteran filed with a Veterans' Administration (now Department of Veterans Af-

fairs) RO an April 1982 application for service connection for chest pain, which he alleged began in 1968. R. at 42–45. In support of the claim, he submitted 1982 VA hospital records, which showed that he had been admitted to the hospital with "chronic pain and swelling of the sternum" and that degenerative arthritis of the sternum was diagnosed. R. at 47. A biopsy performed in the hospital showed that the veteran had osteomyelitis of the sternum. *Ibid.* The hospital records related the veteran's statement "that he [had had] continuous pain in his sternum since a fellow soldier fell across his chest while he was in the Army." R. at 46.

In a June 1982 decision, the RO denied the veteran's claim of service connection for arthritis of the sternum. R. at 48–49. On June 21, 1982, the RO decision was amended to include a finding of non-service-connected osteomyelitis of the sternum. R. at 50. In November 1982, the RO denied the veteran's claim for non-service-connected pension. Suppl.R. at 35. The RO rated the non-service-connected osteomyelitis of the sternum as 20% disabling, degenerative arthritis of the sternum as 10% disabling, and pustular lesions on his palms and soles of unknown etiology as 0% disabling. *Ibid.* The veteran did not appeal the RO decisions, and they became final.

The veteran sought to reopen these claims in April 1985, asserting that his condition was caused by exposure to defoliants and adding "bleeding per rectum [and] numbness of hands" to the previous assertion of disabilities. Suppl.R. at 36. That same month, the RO denied service connection, finding that the veteran's conditions were not "considered by the medical community to be residuals of exposure to defoliants." *Ibid.*

In August 1985, a VA psychological examination concluded that the veteran had a number of symptoms of post-traumatic stress disorder (PTSD) but "not of sufficient breadth and intensity" to warrant the diagnosis. Suppl.R. at 15. In December 1986, another VA examination yielded a diagnosis of chronic PTSD. Suppl.R. at 19. In February 1987, the veteran attempted to reopen his claim for service connection for his chest condition, alleging that it was the result of exposure to Agent Orange, and added claims for service connection for PTSD and a left-eye condition. Suppl.R. at 37–39. The RO found that no new and material evidence was submitted so as to reopen the veteran's claim for service connection for a chest condition; that there was no record of treatment for an eye condition while in service; and that a 10% rating for service-connected chronic PTSD was warranted. Suppl.R. at 38. The veteran was also rated for the following non-service-connected conditions: Left eye, 0% disabling; osteomyelitis of the sternum, 20% disabling; and degenerative arthritis of the sternum, 10% disabling. Suppl.R. at 39.

In October 1987, the veteran stated at a VA medical examination that he had experienced severe chest, shoulder, and neck pain; "breaking out" on his feet and hands; shrapnel in his left eye; problems with his nerves; and numbness in his hands. R. at 54. A psychiatric evaluation report confirmed the diagnosis of "PTSD, chronic", R. at 61, and noted that the veteran "was educated to the 7th grade", R. at 59. That same month the veteran filed claims for service connection for malaria and scars secondary to fragment wounds; for an increased rating for service-connected PTSD; and for pension. Suppl.R. at 40.

In December 1987, the RO increased the veteran's PTSD rating to 30%, and assigned 0% ratings to the service-connected nodule in the nasal corner of the left eye, his scars, and malaria. Suppl.R. at 41. The RO denied his claim for pension, finding that his non-service-connected lesions of the hands and feet were 10% disabling and that osteomyelitis was 0% disabling. *Ibid.* At a December 1988 RO hearing, the veteran testified under oath that he had sustained a chest injury in service when a fellow soldier fell on him and hit him with an elbow. R. at 70. He stated that he did not know whether the nodule in his left eye had affected his eyesight, but that he had never had a thorough eye examination. R. at 76. The hearing officer found that the evidence of record did not warrant a compensable evaluation for the nodule in the left eye and service connection for the veteran's chest condition. R. at 82.

In September 1989, the veteran again sought to reopen his pension claim. R. at 94. In November 1989, another VA psychiatric evaluation confirmed the diagnosis of chronic PTSD. Suppl.R. at 26. In a January 1990 decision, the RO confirmed the 30% rating for PTSD and denied the pension claim, finding that the "evidence [did] not establish that [the veteran was] permanently prevented from obtaining and following substantially gainful employment." R. at 96. In January 1990, he appealed to the BVA. R. at 98.

In a January 1991 decision, the BVA found that the RO had failed to include in its description of the SOC "the law and regulations regarding finality of the June 1982 rating decisions" and remanded the case with the instruction to furnish the veteran with an SSOC in compliance with the Board's findings. R. at 122. The SSOC was issued in January 1991. In the September 10, 1991, decision here on appeal, the BVA found, inter alia, that the veteran's "disabilities [could not] be considered severe enough to permanently preclude substantially gainful employment for someone of [the] veteran's relatively young age." *Grantham*, BVA 91–26911, at 6. A timely appeal to this Court followed.

### B. Analysis

■ *1. Generally applicable law.* To establish entitlement to VA non-service-connected pension under 38 U.S.C. § 1521, a veteran must (1) have served during a period of war for a requisite period of time; (2) be permanently and totally disabled; and (3) have income that meets a certain income standard. *See also* 38 C.F.R. § 3.3(a)(3) (1994); *Brown (Clem) v. Derwinski*, 2 Vet. App. 444, 446 (1992); *Hyder v. Derwinski*, 1 Vet.App. 221, 223 (1991); *Roberts v. Derwinski*, 2 Vet.App. 387, 389 (1992); *Ferraro v. Derwinski*, 1 Vet.App. 326, 333 (1991); *Odiorne v. Principi*, 3 Vet.App. 456, 460 (1992). "Determinations of permanent total disability for pension purposes [are] based on non-service-connected disability or combined non-service-connected and service-connected disabilities". 38 C.F.R. § 3.314(b)(2) (1994). Generally, "total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. § 3.340(a)(1) (1994).

Even if the disability is less than total according to the Schedule for Rating Disabilities, VA pension may still be awarded. Under 38 C.F.R. § 4.16(a), the following percentage requirements are established for the assignment of a total disability rating based on individual unemployability for compensation purposes:

> [I]f there is only one such disability, this disability shall be ratable at 60 percent or more, and ... if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more.

38 C.F.R. § 4.16(a) (1994). The same percentage requirements are used for total disability ratings for pension purposes, *see* 38 C.F.R. § 4.17 (1994), but the regulation provides that "all veterans who fail to meet the percentage standards but who meet the basic entitlement criteria and are unemployable, [must] be referred by [the] rating board to the Adjudication Officer under § 3.321(b)(2)". 38 C.F.R. § 4.17(b) (1994). Section 3.321(b)(2) provides as follows:

> (2) *Pension.* Where the evidence of record establishes that an applicant for pension who is basically eligible fails to meet the disability requirements based on the percentage standards of the rating schedule but is found to be unemployable by reason of his or her disability(ies), age, occupational background and other related factors, the following are authorized to approve on an extra-schedular basis a permanent and total disability rating for pension purposes: the Adjudication Officer; or where regular schedular standards are met as of the date of the rating decision, the rating board.

38 C.F.R. § 3.321(b)(2) (1994).

Sections 4.17 and 3.321(b)(2) establish subjective standards "by providing pension eligibility for a veteran whose disability does not meet the objective criteria but which for that particular veteran is so incapacitating as to preclude a substantially gainful occupation". *Talley v. Derwinski*, 2 Vet.App. 282, 288

(1992). This Court has interpreted § 3.321 to mean that "the rating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical." *Fisher v. Principi,* 4 Vet.App. 57, 60 (1993) (in the context of a claim for compensation).

■■ The Board is required to provide a written statement of reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record. *See* 38 U.S.C. § 7104(d)(1). The statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Masors v. Derwinski,* 2 Vet. App. 181, 188 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990).

■ Moreover, the Board "may consider only independent medical evidence to support [its] findings". *Colvin v. Derwinski,* 1 Vet. App. 171, 175 (1991); *see Thurber v. Brown,* 5 Vet.App. 119, 122 (1993); *Hatlestad v. Derwinski,* 3 Vet.App. 213, 217 (1992) (*Hatlestad II* ). "If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion [or] ordering a medical examination". *Colvin, supra; see Hatlestad, supra; see also* 38 U.S.C. § 7109, 38 C.F.R. § 20.901(a), (d) (1994).

■ According to the benefit-of-the-doubt rule in 38 U.S.C. § 5107(b), a VA claimant need have only an "approximate balance of positive and negative evidence in order to prevail". *See Gilbert,* 1 Vet.App. at 54. Further, the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1) applies to the Board's application of the benefit-of-the-doubt rule. *See Gilbert,* 1 Vet.App. at 58. Where "there is significant evidence in support of an appellant's claim, the Board must provide a satisfactory explanation as to why the evidence was not in equipoise." *Williams (Willie) v. Brown,* 4 Vet.App. 270, 273–74 (1993).

2. *Application of law to facts.* The veteran has qualifying service for purposes of 38 U.S.C. § 1521(a). Accordingly, the issue is whether his service-connected and non-service-connected disabilities cause him to be permanently and totally disabled. *See* 38 U.S.C. § 1521(a).

■ In its September 1991 decision, the Board apparently considered the regulations pertaining to a total and permanent disability rating without first evaluating the veteran's conditions under the schedule of ratings. The last evaluation of the veteran's non-service-connected disabilities was made by the RO in December 1987 (Suppl.R. at 41), and the Board did not mention those results in its decision. In *Roberts,* 2 Vet.App. at 390, this Court held that "before a total and permanent disability rating can be awarded [for pension purposes], an evaluation must be performed under the Schedule for Rating Disabilities to determine the percentage of impairment caused by each disability." Accordingly, the Court concludes that there must be a new rating examination in order that the adjudication may be a fully informed one. *See Green (Victor) v. Derwinski,* 1 Vet.App. 121, 124 (1991) (duty to assist may include "the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one").

■ The Board also failed to discuss whether the veteran was entitled to VA pension on an extra-schedular basis under 38 C.F.R. §§ 4.17(b) and 3.321(b)(2). Although this issue was not raised by the veteran, "the BVA [was] not free to ignore its own regulations." *Roberts, supra* (citing *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991)). Therefore, the Board should have given the veteran extra-schedular consideration or explained why it was not applicable.

■ The BVA did not provide an adequate statement of reasons or bases in support of its finding that the veteran's disabilities did not prevent him from working. *See Hyder,* 1 Vet.App. at 224; *Brown,* 2 Vet.App. at 445; *Fluharty v. Derwinski,* 2 Vet.App. 409, 412 (1992). The Board mentioned the results of the November 1989 psychiatric evaluation and found that the veteran's con-

dition at that time was not severe enough to preclude him from gaining employment. His education and background were not discussed except for a conclusory statement that "[d]espite his limited educational background ... [his] disabilities cannot be considered severe enough to permanently preclude substantially gainful employment for someone of the veteran's relatively young age." *Grantham,* BVA 91–26911, at 6.

For all of the above reasons, the Court will vacate the BVA decision and remand the matter for further development and readjudication in accordance with this opinion.

### III. Conclusion

Upon consideration of the record and the submissions of the parties, the Court holds that the appellant's appeal as to his left-eye claim is dismissed for lack of a jurisdiction-conferring NOD. *See West, supra.* The Court grants the Secretary's motion for remand, summarily vacates the September 10, 1991, BVA decision as to the pension claim and remands the matter for expeditious further development and readjudication, on the basis of all applicable law and regulation, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1310, 5107(a), (b), 7104(d)(1), 7261; *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims "remanded" by BVA or Court). *See Allday. v. Brown,* 7 Vet.App. 517, 533–34 (1995). "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

DISMISSED IN PART; VACATED AND REMANDED IN PART.

### SEPARATE VIEWS

The author judge adds the following views to emphasize his continued belief that by deciding as the majority did in *West, supra,* the Court has started down a very murky road in which NODs can somehow perform a function of "triggering a further appeal of the case to the BVA", *West,* 7 Vet.App. at 331, even though "[a]ppellate review" had already been initiated by an NOD, *Hamilton v. Brown,* 39 F.3d 1574, 1582 (Fed.Cir.1994) (quoting 38 U.S.C. § 7105(a)).

In practical terms, it seems quite clear that had the veteran not taken action in his December 1988 hearing testimony to make clear to the RO that he disagreed with the 0% rating, the RO would not have issued the August 1989 SOC on the issue of a compensable rating for the veteran's left-eye condition and his appeal would not have been forwarded to the BVA for review of the December 1987 non-compensable-rating RO decision. As the record shows, at the time of the hearing (almost one year after the December 1987 RO decision) no SOC had been issued. I am bound to apply the *West* opinion conscientiously, and I cannot, consistent with the holding of *West,* here construe the December 1988 hearing testimony as an NOD as to the December 1987 RO decision. *See Bethea v. Derwinski,* 2 Vet.App. 252, 254 (1992) (Court is bound by prior panel and en banc opinions and "a panel or single judge may not render a decision which conflicts materially with such earlier panel or en banc opinion"). However, for the reasons stated in my dissenting opinion with Judge Kramer in *West,* I would sustain the later NOD in this case were I free to do so.

I note, however, that the issues decided by *West* have apparently been appealed to the U.S. Court of Appeals for the Federal Circuit in the consolidated cases of *Barrera v. Brown* (No. 95–7045, appealed filed April 24, 1995), and *Johnson v. Brown* (No. 95–7057, appeal filed June 19, 1995). Should this Court's opinion in *West* be reversed, as it should be, by the Federal Circuit, I would certainly hope the Court would favorably consider a motion by the appellant in the instant case for the Court to revoke its judg-

ment and mandate as to this opinion and withdraw that portion of this opinion that dismisses the appellant's appeal on the left-eye claim.