Citation Nr: 1456923 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 12-20 788 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of service connection for a skin disorder, variously claimed as rosacea and chloracne, to include as a result of exposure to herbicides.

2. Entitlement to service connection for bilateral hearing loss.

3. Entitlement to service connection for a disability manifested by sensitivity to light.


REPRESENTATION

Appellant represented by: Colorado Division of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

D. Orfanoudis, Counsel


INTRODUCTION

The Veteran had active service from December 1968 to June 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from March 2011 and June 2011 rating decisions of the Department of Veterans Affairs (VA), Regional Office (RO), in Denver, Colorado 

In July 2014, the Veteran testified at a video conference hearing over which the undersigned Veterans Law Judge presided. A transcript of that hearing has been associated with the record.

The Veteran presently seeks to reopen a claim of service connection for variously claimed skin disorder, last denied in October 1970. The Veteran did not appeal the decision, and in order for VA to review the merits of the claim, the Veteran must submit new and material evidence. The Board is required to address this aspect of the issue despite the RO's findings. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001); Barnett v. Brown, 83 F.3d 1380, 1383-1384 (Fed. Cir. 1996). As such, the issue before the Board is as captioned above.

In addition to the paper claims file, there is a Virtual VA paperless claims file associated with the Veteran's claim. All records in such file have been considered by the Board in adjudicating this matter. 

The issues of service connection for a skin disorder (on the merits) and for a disability manifested by sensitivity to light are addressed in the REMAND portion of the decision below and are REMANDED to the agency of original jurisdiction.


FINDINGS OF FACT

1. By rating action dated in October 1970, the RO denied service connection for a skin disorder; the Veteran did not submit a timely notice of disagreement and new and material evidence was not received during the relevant appeal period.

2. Evidence received since the October 1970 rating decision that denied service connection for a skin disorder relates to an unestablished fact necessary to substantiate the claim, and raises a reasonable possibility of substantiating the underlying claim.

3. In correspondence received in July 2014, as well as during the July 2014 video conference hearing, prior to the promulgation of a decision in the appeal, the Veteran indicated a desire to withdraw from appeal the issue of entitlement to service connection for bilateral hearing loss.


CONCLUSIONS OF LAW

1. The unappealed October 1970 RO decision that denied service connection for a skin disorder is final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. §§ 3.104(a), 3.160(d), 20.302, 20.1103 (2014).
 
2. The additional evidence received since the October 1970 rating decision that denied service connection for a skin disorder is new and material, and the claim is reopened. 38 U.S.C.A. §§ 5108 (West 2002); 38 C.F.R. § 3.156(a) (2014).

3. The criteria for withdrawal of the appeal of the issue of entitlement to service connection for bilateral hearing loss have been met. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2002); 38 C.F.R. § 20.204 (2014).




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2014); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

The Veteran has withdrawn his appeal with regard to the issue of service connection for bilateral hearing loss; and the Board is reopening the previously denied claim of service connection for a skin disorder. See Kent v. Nicholson, 20 Vet. App. 1 (2006). In light of the foregoing, the Veteran does not require further assistance to substantiate the claims.

Reopening Skin Disorder, Variously Claimed as Rosacea and Chloracne

Service connection will be granted for a disability resulting from an injury sustained or disease incurred in the line of duty or for aggravation of a pre-existing injury or disease in the line of duty. 38 U.S.C.A. § 1110 (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.303, 3.304 (2014).

In order to prevail on the issue of service connection for any particular disability, there must be evidence of a current disability; evidence of in-service occurrence or aggravation of a disease or injury; and medical evidence, or in certain circumstances, lay evidence, of a nexus between an in-service injury or disease and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board").

A Veteran who had active service in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, will be presumed to have been exposed to an herbicide agent during such service unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. See 38 U.S.C.A. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii).
Diseases associated with exposure to certain herbicide agents used in support of military operations in the Republic of Vietnam during the Vietnam era also will be presumed to have been incurred in service. 38 U.S.C.A. § 1116(a)(1); 38 C.F.R. § 3.307(a)(6). This presumption requires exposure to an herbicide agent and manifestation of the disease to a degree of 10 percent or more within the time period specified for each disease. 38 C.F.R. § 3.307(a)(6)(ii).

The following diseases are associated with herbicide exposure for purposes of this presumption: chloracne or other acneform disease consistent with chloracne, type 2 diabetes (also known as type II diabetes mellitus or adult-onset diabetes), Hodgkin's disease, chronic lymphocytic leukemia, multiple myeloma, non-Hodgkin's lymphoma, acute and subacute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), soft-tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma), ischemic heart disease, Parkinson's disease, and B cell leukemias. 38 C.F.R. § 3.309(e).

The Secretary, under the authority of the Agent Orange Act of 1991 and based on 
the studies by the National Academy of Sciences (NAS), has determined that there is no positive association between exposure to herbicides and any condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. See Notice, 59 Fed. Reg. 341-346 (1994); see also Notice, 61 Fed. Reg. 41, 442-449, and 61 Fed. Reg. 57, 586-589 (1996); Notice, 64 Fed. Reg. 59, 232-243 (Nov. 2, 1999); Notice, 67 Fed. Reg. 42, 600-08 (June 24, 2002); Notice, 72 Fed. Reg. 32, 395-407 (June 12, 2007). 

However, even if a Veteran is found not entitled to a regulatory presumption of service connection, the claim still must be reviewed to determine whether service connection may be established on a direct basis. Combee v. Brown, 34 F.3d 1039 (Fed Cir. 1994). See, also, McCartt v. West, 12 Vet. App. 164, 167 (1999) (the principles set forth in Combee, which instead concerned exposure to radiation, are equally applicable in cases involving Agent Orange exposure to establish direct causation).

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value.

An October 1970 rating decision denied the Veteran's claim of service connection for a skin disorder. The Veteran had asserted that his skin disorder was first noted in May 1969, and that he had been treated in Vietnam in July 1969. The RO denied the Veteran's claim as the service treatment records had not shown treatment for acne or any other skin disorder at any time in service, and the Veteran's separation examination report had shown that his skin was normal.

The Veteran did not timely submit a notice of disagreement within one year of the October 1970 decision. No relevant evidence was received within the appeal period after the decision. As such, the decision became final based on the evidence then of record. 38 U.S.C.A. § 7105 (West 2002); cf. 38 C.F.R. § §§ 3.104(a), 3.156(b), 3.160(d), 20.302 (2014) (new and material evidence received within the appeal period after a decision is considered as having been received in conjunction with the prior claim); Bond v. Shinseki, 659 F.3d 1362 (Fed. Cir. 2011) (VA must determine whether evidence received during the appeal period after a decision contains new and material evidence per 3.156(b) and failure to readjudicate the appeal after receipt of such evidence renders the decision non-final). If new and material evidence is presented or secured with respect to a claim that has been disallowed VA shall reopen the claim and review the former disposition of the claim. 38 U.S.C.A. § 5108; see Manio v. Derwinski, 1 Vet. App. 140, 145 (1991).

Under 38 C.F.R. § 3.156(a), evidence is considered "new" if it was not previously submitted to agency decision makers. "Material" evidence is evidence which, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 

For the purpose of determining whether a case should be reopened, the credibility of the evidence added to the record is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

When determining whether the submitted evidence meets the definition of new and material evidence, VA must consider whether the new evidence could, if the claim were reopened, reasonably result in substantiation of the claim. Shade v. Shinseki, 24 Vet. App. 110, 118 (2010). Thus, pursuant to Shade, evidence is new if it has not been previously submitted to agency decision makers and is material if, when considered with the evidence of record, it would at least trigger VA's duty to assist by providing a medical opinion, which might raise a reasonable possibility of substantiating the claim. Id. 

At the time of the October 1970 rating decision, the evidence of record included the Veteran's available service treatment records, which were silent as to any reports of or treatment for a skin disorder during his period of active service.

Following the October 1970 rating decision, in August 2010, the Veteran sought to reopen his claim, asserting that he has chloracne and rosacea as a residual of chloracne.

A VA Agent Orange Examination report dated in July 2010 shows that the Veteran was noted to have a past medical history of chloracne that was treated with radiation. The assessment was chloracne that was treated with radiation.

During the July 2014 Board hearing, the Veteran testified that he developed a skin disorder during combat service in Vietnam, which he described as a sensitive and painful reddening of the face, similar to a sun burn. He added that following service, he was treated at the Peterson Air Force Base Hospital regularly for approximately 18 months in 1971.

The Veteran also submitted lay statements from K.H. and S.W., indicating that they had known the Veteran in 1971 and 1972, and had driven him to the hospital on occasional for face treatments.

In light of the evidence associated with the record following the September 1970 rating decision, the Board finds that the newly received evidence pertains to an element of the claim that was previously found to be lacking. In this regard, the medical evidence of record shows that the Veteran has been given an assessment of chloracne, though the degree of the disability was not identified. Moreover, the Veteran's testimony and lay evidence suggests that the Veteran had manifested the asserted disability in service, and had been treated for such shortly thereafter. The new evidence, when considered with the old, triggers VA's duty to provide additional development in this regard. Hence, it raises a reasonable possibility of substantiating the claim. See Shade.

As such, the above evidence bears directly and substantially upon the specific 
matter under consideration, is neither cumulative nor redundant, and by itself or in connection with the evidence previously assembled is so significant that it must be considered in order to fairly decide the merits of the Veteran's claim of service connection for a skin disorder, variously claimed as rosacea and chloracne, to include as a result of exposure to herbicides. Therefore, the claim is reopened.

Bilateral Hearing Loss

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2002). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2014). Withdrawal may be made by the appellant or by his authorized representative. 38 C.F.R. § 20.204. In the present case, in correspondence received in July 2014, as well as during the July 2014 video conference hearing, the Veteran indicated that he wished to withdraw his appeal as to the issue of service connection for bilateral hearing loss. Hence, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review the appeal of this issue, and it is dismissed.


ORDER

New and material evidence having been received, the Veteran's claim of entitlement to service connection for a skin disorder, variously claimed as rosacea and chloracne, to include as a result of exposure to herbicides, is reopened; to this limited extent, the appeal of this issue is granted.

The appeal as to the issue of service connection for bilateral hearing loss is dismissed.


REMAND

Skin Disorder, Variously Claimed as Rosacea and Chloracne

In reopening the Veteran's claim of service connection for a skin disorder, variously claimed as rosacea and chloracne, to include as a result of exposure to herbicides, the Board finds that the issue must be remanded for further development of the record so as to ensure that the Veteran is accorded full compliance with the statutory duty to assist.

As indicated above, in July 2010, the Veteran was given an assessment of chloracne treated with radiation. The presumption for diseases associated with exposure to herbicide agents requires exposure to an herbicide agent and manifestation of the disease to a degree of 10 percent or more within a year after the last date on which the Veteran was exposed to an herbicide agent during active service. 38 C.F.R. § 3.307(a)(6)(ii). A VA examination report dated in December 2010 shows that the examiner indicated that, based upon the Veteran's reported history, it sounded like the Veteran underwent UV treatment for 18 months in 1971. In light of the foregoing, the Board finds that additional development is warranted.

In October 2011, the RO attempted to obtain treatment records of the Veteran from Peterson Air Force Base for the period from July 1970 to December 1970. The request resulted in a negative response. A review of the claims file reveals that the Veteran has indicated that he had been treated from 1971 to 1972. This was reiterated in the lay statements provided in support of his claim. As such, the Board finds that an additional search for such medical treatment records must be undertaken.

Additionally, the Veteran has not had a VA examination so as to assess the precise nature and etiology of his asserted skin disorder. VA is obliged to provide an examination or obtain a medical opinion in a claim for service connection when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service, and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A(d); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The threshold for finding a link between current disability and service is low. Locklear v. Nicholson, 20 Vet. App. 410 (2006); McLendon, 20 Vet. App. at 83. As such, on remand, the Veteran shall be scheduled for a VA skin disorders examination.

Disability Manifested By Sensitivity to Light

During the July 2014 hearing, the Veteran indicated that he developed a disability manifested by a sensitivity to light during his period of active service in Vietnam. 

A service treatment record dated September 14, 1969, shows that the Veteran was treated for a two day history of eye soreness, blurred vision, and photophobia. Service treatment records dated September 22, 1969, show that the Veteran continued to report blurred vision, irritation, and extreme photophobia in the left eye. No history of trauma was indicated. An impression of non-granulomatous iritis with macular edema was provided.

A VA optometry note dated in December 2010 shows that the examination of the Veteran was conducted without records review. The Veteran reported that he had sensitivity to light that began during service. He reported that his eye had been burned in a blast in Chu Lai in 1969. He described that he would get severe headaches from the sun to the point of passing out and having to be pulled off the line. The examiner noted that it sounded like the Veteran underwent UV treatment for 18 months in 1971. A history of two Lasik procedures was indicated. The diagnosis was status post Lasik time two; and self-report of photosensitivity secondary to time in Vietnam with improvement after Lasik. There was no apparent reaction to bright like shined in the eye during examination.

The examiner explained that the Veteran had a self-reported history of photosensitivity since his time in Vietnam although he doesn't react when the exam lights are shined in his eyes. He was said to report a history of blast exposure. The examiner indicated that patients with mild traumatic brain injury often report photosensitivity as a complaint. Usually this is self-limiting and mostly resolved over the course of time although not necessarily. Photosensitivity was also said to be a common complaint as patients age. Fair skinned people often will be more light sensitive than darkly complected people but this was often a function of how they are put together. The examiner was unable to determine whether or not current claims of photosensitivity were related to time in service as opposed to a normal physiologic variation.

In light of the foregoing, the Board finds that additional development is warranted. As noted above, the Board finds that an additional search for the Veteran's treatment records from the Peterson Air Force Base for the period from 1971 to 1972 should be undertaken prior to further adjudication of this issue. Efforts to obtain available treatment records from the two referenced Lasik procedures should also be undertaken.

Additionally, the Board finds that the opinion of the December 2010 VA examiner is of limited probative value as the examiner did not have the benefit of review of the Veteran's service treatment records when asked to provide an etiology opinion. As a result, the examiner did not comment on the in-service incidents of photosensitivity and diagnosis of non-granulomatous iritis with macular edema. The examiner also did not provide an explanation for the inability to provide an opinion as to the etiology of the asserted disorder; or explain whether the inability was due to the limits of medical knowledge or whether there was additional evidence that would have permitted him to provide the needed opinion. Hence, the opinion is inadequate. See Jones v. Shinseki, 23 Vet. App. 382 (2010). As such, a new examination is required. When medical evidence is inadequate, VA must supplement the record by seeking an advisory opinion. Colvin v. Derwinski, 1 Vet. App. 171 (1991); Hatlestad v. Derwinski, 3 Vet. App. 213 (1992). See also Barr v. Nicholson, 21 Vet. App. 303, 311-12 (2007) (once VA provides an examination to a Veteran, VA has a duty to ensure that the examination is adequate for evaluation purposes); Hicks v. Brown, 8 Vet. App. 417, 422 (1995) (inadequate medical evaluation frustrates judicial review).

The Veteran has also reported a history of a blast injury in Chu Lai in 1969. The Board finds that his service personnel records may be of assistance in establishing the Veteran's claim. As such, on remand, the agency of original jurisdiction should also endeavor to obtain the Veteran's service personnel records.

Finally, as this matter is being remanded for the reasons set forth above, any additional VA treatment records of the Veteran for his asserted skin and eye disabilities should also be obtained. See 38 U.S.C.A. § 5103A(b), (c); 38 C.F.R. § 3.159(b); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim). 

Accordingly, the case is REMANDED for the following action:

1. The agency of original jurisdiction shall ask the Veteran to identify all locations of VA treatment or evaluation for his asserted disabilities and contact each VA medical facility identified by the Veteran to obtain ongoing medical treatment records pertaining thereto. All records obtained must be associated with the Veteran's claims file.

2. The agency of original jurisdiction shall contact the appropriate records agency, and request that the Veteran's complete service personnel records be provided.

Efforts to obtain these records should continue until it is determined that they do not exist, or that further efforts to obtain the records would be futile. The Veteran must be notified of any records that cannot be obtained, of VA's efforts to obtain the records, and of any additional actions that will be undertaken. All records obtained must be associated with the Veteran's claims file.

3. The agency of original jurisdiction shall contact the appropriate records agency, and request that any available treatment records of the Veteran from Peterson Air Force Base for the period from 1971 to 1972 be provided.

Efforts to obtain these records should continue until it is determined that they do not exist, or that further efforts to obtain the records would be futile. The Veteran must be notified of any records that cannot be obtained, of VA's efforts to obtain the records, and of any additional actions that will be undertaken. All records obtained must be associated with the Veteran's claims file.

4. The agency of original jurisdiction shall contact the Veteran to ascertain if he has in his possession treatment for his history of two Lasik procedures. If an affirmative response is received, the Veteran shall be requested to forward any such private treatment records to the agency of original jurisdiction. If the Veteran does not have such records, he shall be provided with an Authorization and Consent to Release Information to the VA (VA Form 21-4142), so that the agency of original jurisdiction may obtain and associate with the claims file any identified private treatment records. If a negative response is received from the Veteran, such should be associated with the claims file and the Veteran notified.

5. After associating any pertinent, outstanding records with the claims file, the agency of original jurisdiction shall schedule the Veteran for a VA skin examination with an appropriate physician. The examiner must be provided with the Veteran's claims file and a copy of this Remand for review prior to conducting the examination. The examiner shall indicate in the report whether or not the claims file was reviewed. All diagnostic tests and special studies deemed necessary by the examiner must be accomplished.

The examiner is requested to specify whether the Veteran currently has a skin disability. If so, the examiner should indicate whether the current skin disability has a known clinical diagnosis, to include whether it is chloracne or any other acneform disease consistent with chloracne, in light of the medical history and examination findings.

If a skin disorder is diagnosed, the examiner shall provide an opinion as to whether it is at least as likely as that the disorder had it onset during active service or is related to any in-service disease or injury, including exposure to herbicides. 

If chloracne or any other acneform disease consistent with chloracne is diagnosed, the examiner shall provide an opinion as to whether it is at least as likely as that the disorder had manifested to a compensable degree within one year of the Veteran's separation from service. It is noted that chloracne as compensable when manifested by deep acne (deep inflamed nodules and pus-filled cysts) affecting 40 percent or more of the face and neck or; deep acne other than the face and neck. See 38 C.F.R. § 4.118 Diagnostic Code 7829 (2014).

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran's reports of symptomatology, he or she must provide a reason for doing so.

The absence of evidence of treatment for a particular skin disorder in the Veteran's service treatment records cannot, standing alone, serve as the basis for a negative opinion.

If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what if any additional evidence would be necessary before an opinion could be rendered. The examiner must provide a rationale for each opinion given.

6. After associating any pertinent, outstanding records with the claims file, the agency of original jurisdiction shall schedule the Veteran for a VA eye examination with an ophthalmologist. The examiner must be provided with the Veteran's claims file and a copy of this Remand for review prior to conducting the examination. The examiner shall indicate in the report whether or not the claims file was reviewed. All diagnostic tests and special studies deemed necessary by the examiner must be accomplished.

The examiner is requested to specify whether the Veteran currently has a disability manifested by sensitivity to light. If so, provide an opinion as to whether it is at least as likely as that the disability had it onset during active service or is related to any in-service disease or injury, including exposure to herbicides. In doing so, the examiner must consider the September 1969 incidents of treatment for eye soreness, irritation, blurred vision, and extreme photophobia.

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran's reports of symptomatology, he or she must provide a reason for doing so.

The absence of evidence of treatment for a particular eye disorder in the Veteran's service treatment records cannot, standing alone, serve as the basis for a negative opinion.

If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what if any additional evidence would be necessary before an opinion could be rendered. The examiner must provide a rationale for each opinion given.

If the VA ophthalmologist determined that the Veteran undergo additional diagnostic testing (i.e., Traumatic Brain Injury evaluation), the agency of original jurisdiction shall schedule the Veteran for such testing.
 
7. The agency of original jurisdiction will then readjudicate the Veteran's claims. If the benefits sought on appeal remain denied, the Veteran and his representative should be provided with a Supplemental Statement of the Case. An appropriate period of time should be allowed for response.

No action is required of the Veteran until notified by the RO; however, the veteran is advised that failure to report for any scheduled examination may result in denial of the claim. 38 C.F.R. § 3.655 (2014). He has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
THOMAS J. DANNAHER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs